## DAVIS, Agent, v. HAND.

(Circuit Court of Appeals, Eighth Circuit. May 21, 1923.)

No. 6084.

1. **Master and servant ⬅129(1)—Violation of Safety Appliance Act must be proximate cause of accident.**

For liability for violation of Safety Appliance Act (Comp. St. §§ 8605–8623) to exist, such violation and the acts and consequences naturally and directly following therefrom must have been the direct and proximate cause of the injury.

2. **Master and servant ⬅129(6)—Violation of Safety Appliance Act held not proximate cause of injury to employee, assuming dangerous position after completing coupling.**

Where deceased, a fireman, had completed his duty of making coupling of cars, which because of defective couplers had required him to go between cars to line up the couplings, and the train was then at a standstill, and it was then his duty to give the engineer the signal to move out, in such manner and from such a position as he might select, and this he did from a position either on the sill at the end of the car, or standing on the ground between the car and a coal bin with insufficient clearance, of which he had knowledge, either position being dangerous. and was crushed between the car and the bin when the train went ahead on his signal, *held*, that the proximate cause of his death was not any violation of the Safety Appliance Act (Comp. St. §§ 8605–8623), but his own carelessness in taking a dangerous position from which to signal.

3. **Master and servant ⬅113(1)—Insufficient clearance held not negligence as to employee on car.**

Where deceased, crushed between coal car and coal bin with insufficient clearance on a spur track running only to the bin, was familiar with the clearance, and it was not necessary for him to ride on the side of the car, *held*, on the facts of this particular case, the maintenance of the bin with such clearance was not negligence.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Eva Hand, administratrix, against James C. Davis, agent. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Yale C. Holland, of Omaha, Neb. (E. J. White, of St. Louis, Mo., and J. A. C. Kennedy, of Omaha, Neb., on the brief), for plaintiff in error.

Herman Aye and R. M. Switzler, both of Omaha, Neb., for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. The husband of the plaintiff was killed February 10, 1920, while in the employ of the United States Rail-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

road Administration at Omaha, Neb., as the result of being crushed between a coal car and the side of a coal bin adjacent to the track on which the car was being moved. The railroad in question was the Missouri Pacific, a Delaware corporation under government operation. We will refer to the parties as they stood below.

At the time of the accident and for some time prior thereto the defendant maintained in its yards a coal bin consisting of an old abandoned coal car about 40 feet long, used for storing coal for use in the roundhouse immediately adjoining on the west. A spur track ran along the east side of the bin and ended just beyond its north end. This track was straight, except the north end was a little further from the coal bin than the south end. From the south end of the bin, south to a turntable, a distance of 60 feet, there was a very slight curve in the track. The side of the bin adjoining the track bulged somewhat, and at its south end was very close to the track, and would not begin to clear a man on the side of a passing car. This track was used only for the purpose of holding an occasional load of coal while being unloaded into the bin. There was clear space to the east of this track.

Fay D. Hand, the deceased, and husband of plaintiff, was the fireman of what is called "a clamshell," an old converted steam shovel used for loading gravel, coal, clearing cinder beds, coaling engines, and setting and taking out cars from this spur track. It operated under its own power, and its total length, including a tender, was about 60 or 70 feet. The crew consisted of an engineer and fireman. It was the duty of the deceased, as fireman, among other things, to assist in making couplings between the clamshell and cars that it moved. The engineer's place was on the right-hand side and to the front of the clamshell, where the operating machinery was located. All signals given by any one making a coupling had to be given on the right-hand side, in order to attract the attention of the engineer.

At the time of the accident an empty coal car was standing on this spur track east of the coal bin, and projected a very little south of the south end of the bin. The clamshell crew were ordered to take out this empty car and set in a loaded one. In accordance therewith the engineer, Broom, and Hand took the clamshell over onto the spur track and backing up to the empty car sought to couple up by impact, but the couplings failed to work. When this first attempt was made the deceased was standing at the south end of the coal bin and west of the track. As a result of the first impact the empty car was shoved northward and several feet past the south end of the bin. Hand then gave the engineer a signal to move forward clear of the coal bin, evidently in order that he could go between the bin, the clamshell, and the empty car to see why the coupling had not made. It is undisputed that he could not go between the cars until the clamshell was far enough south to be clear of the bin. He did so, and from a position at the end of the car gave a signal to the engineer to again back up. This was done, and the second attempt to couple by impact failed, and the coal car again shoved a few feet further to the north, leaving an open space between the end of the tender of the clamshell and the empty car.

Hand again signaled the engineer to move north Hand being between the empty car and the tender. On this, the third impact, the coupling made, evidently as the result of Hand having lined up or adjusted the couplings. He then gave the engineer a signal to go ahead. The engineer moved a few feet only, in order to ascertain whether or not the coupling had in fact been made. The engineer testified that he then looked out of his window and that Hand again signaled him to go ahead, his testimony being:

"Q. After he gave you the first signal to test out whether it had coupled or not, you went forward, and then you stuck your head out again, and he gave you another sign to go ahead, and said, 'All right, Bill?' A. Yes; correct."

He further stated that to the best of his recollection after the coupling was made, the deceased was standing on the sill at the south end of the coal car, but was not certain about it; also that, when the last signal was given, he could see that part of the body of the deceased from the shoulder up. A witness for the defendant testified that when the last signal was given the deceased was standing on the ground between the cars on the west side of the track, and starting to climb up on the car. It also appears from the testimony, in regard to which there is very little dispute, that Hand was in full charge of the operation, and that the clamshell moved only on his order. On the opposite side of the track from the coal bin there was plenty of room.

On these facts the plaintiff claims that it is established as a matter of law that the federal Safety Appliance Act (Comp. St. §§ 8605–8623) was violated, and that such violation was the proximate cause of the accident and death of the deceased. It may be conceded that the reason the coupling was not made by impact on the first two attempts was due to the failure of the couplings to work, either because of a misalignment of the drawbars or some defect therein, and that, after the first failure to couple, the deceased went between the cars for the purpose of lining them up, with the result that the coupling finally made, as stated, on the third attempt. Admittedly there was no other way that the couplings could have been lined up, as no appliance has yet been devised for accomplishing this in any other manner. In this class of cases the decision of this question only becomes material, if the alleged defects in the couplings, and the consequent violation of the act, was the proximate cause of the resulting accident. It therefore becomes necessary to consider this latter question first.

[1] An important development of statutory law in recent years has been that class of statutes, of which the Safety Appliance Act is an example, that imposes upon common carriers, and other public or semipublic corporations serving the public, the duty of observing certain requirements and using certain safety devices and equipment designed to lessen accidents, under the pain and penalty of being absolutely liable for injuries resulting from their failure to comply with such statutes. The construction and application of these statutes necessarily involves and has led to a great development and discussion of the rule of proximate cause, and it may be stated, without the necessity of citing authority, that to sustain a recovery under these statutes as a

matter of law, the facts must establish two propositions of law: First, that the statute in question was violated by the defendant; and, secondly, that such violation and the acts and consequences naturally and directly following therefrom were the direct and proximate cause of the injury complained of.

[2] Approaching the facts of the present case with this in mind, we inquire—granting, but not deciding, that the failure of the couplers to work automatically under the circumstances here shown constituted a violation of the Safety Appliance Act by the defendant, and required Hand to put himself in a dangerous position—was such violation the direct and proximate cause of the injuries that caused his death. Hand, as the record shows, was in full charge of the operation. The coupling had been fully completed and the train was at a standstill—all before he was injured. From that point on he was a free agent as far as any violation of law, negligent act, or compulsion exercised by the defendant was concerned. If so, then that cause had ceased to be a governing factor over his conduct. It then became his duty to give the engineer the signal to move out, in such a manner and from such a position as he might select. This he did, according to the evidence, from a position either on the sill at the end of the coal car, or between the coal car and the bin standing on the ground. He had the option to place himself in a safe position, either by climbing up into the car, or by crossing to the far side of the track from the coal bin, and going forward to the engine. It is clear from the evidence that he deliberately took the most dangerous position, and gave the signal that resulted in the train going ahead and crushing him between the coal car and the bin. What actually happened after the deceased gave the last signal to the engineer is not known. He may have slipped while climbing up or standing on the car, or been caught between the car and the bin, and dragged along until he fell out at the end of the bin. The only persons engaged in the operation were himself and Broom, the engineer. That Broom exercised due care is shown by the evidence that he received two arm signals and an order by word of mouth from the deceased before moving the train. Whether or not Hand was on the end sill of the coal car, as testified to by the engineer, or standing on the ground and starting to climb up on the car, as testified to by the only other eyewitness, is immaterial. Wherever he was, it was of his own choosing. No claim is made that the deceased was unfamiliar with his surroundings, or that he was engaged in an operation that was new to him; or that he was incapable of performing. In fact, he had performed this operation several times before.

Three comparatively late cases in the Supreme Court on the question of law involved here have clarified a seeming conflict of authority, and renders it unnecessary to discuss here the numerous authorities cited pro and con in the briefs before us. St. Louis & San Francisco R. R. Co. v. Conarty, 238 U. S. 243, 249, 35 Sup. Ct. 785, 786 (59 L. Ed. 1290), was a railroad personal injury case and the Safety Appliance Act was involved. The court refused a recovery because:

"It is not claimed, nor could it be under the evidence, that the collision was proximately attributable to a violation of those provisions, but only that

had they been complied with it would not have resulted in injury to the deceased."

So in the instant case it may properly be said that, except for the failure of the couplings to work, Hand might not have been in the position he was; but it does not necessarily follow for that reason alone that such failure was the proximate cause of his injuries and death.

In a later case, Louisville & Nashville R. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931, a brakeman was injured by being thrown from the top of a freight car that was suddenly bumped by another car because the safety couplings failed to act on impact. The injured employee had nothing to do with the operation. It was contended on behalf of the railroad company that the federal Safety Appliance Act was not applicable, as it was only intended for the benefit of employees injured when between cars for the purpose of coupling or uncoupling them. The court rejected this contention, stating that, while Congress was probably moved to legislate on the subject by reason of the many injuries suffered by employees while coupling cars, yet the test of liability is the failure to comply with the law, and does not depend upon the position the employee may be in or the work which he may be doing at the time he is injured. The court allowed a recovery because it found that the failure to comply with the act was the proximate cause of the injury.

These two cases were cited by opposing counsel in Lang v. New York Central R. R. Co., 255 U. S. 455, 41 Sup. Ct. 381, 65 L. Ed. 729, a railroad negligence case in which the court was called upon to construe the Safety Appliance Act. Without setting forth the facts, it is sufficient to say that the court reconciles the two cases and points out that, although the Layton Case held that the qualified duty of the common law is expanded into an absolute duty in respect to car couplings by the act, yet it must be shown that the employee is "injured because of it," and says:

"But necessarily there must be a casual relation between the fact of delinquency and the fact of injury."

The court further holds it is not enough to show that an accident would not have happened had safety appliances been used or those in use functioned properly; but it must be shown that the violation of the law was the direct and proximate cause thereof.

Applying the authorities to the facts as we have analyzed them in the instant case, it is clear that the accident complained of was not the natural and probable consequence of any violation of the statute. It was not such an accident as was intended to be prevented by the statute. The proximate cause was the deceased's carelessness in placing himself in a dangerous position to give the signal, when he could have placed himself in a safe place before so doing. A new and intervening cause was set in motion by the deceased himself after the coupling had been made, and the necessity for his being between the cars, or in the position he was, had ceased.

A somewhat similar case on the facts was before the Circuit Court of Appeals, Seventh Circuit, in Phillips v. Pennsylvania R. R. Co., 283 Fed. 381. There the plaintiff, a locomotive fireman, went forward

over the boiler to repair a defect in the automatic bell ringer, which under the law was negligence per se. On his return, and when stepping over the steam dome, the safety valve popped, causing him to lose his balance and fall. The safety valve popped because it had reached the pressure for which it was set. It was well said that the plaintiff would not have been in the position he was, except for the defect in the bell. But the court held that the defect was not the proximate cause, as Phillips knew the safety valve would blow at a certain pressure, and also whether it was likely to do so or not, as he was in charge of the fire. See, also, Philadelphia & R. Ry. Co. v. Eisenhart (C. C. A.) 280 Fed. 271; Cole v. German Savings & Loan Soc., 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 416.

[3] Another ground for recovery urged by the plaintiff below was the fact that the defendant maintained the coal bin so close to the track that it would not clear a man on the side of a passing car. Whether or not this is negligence depends upon the facts of each case. The evidence discloses here that the spur was not a busy one. It was not a through track, and was not used for general switching, or for any purpose other than for storing the occasional car of coal that stood there until unloaded. The deceased had several times performed the only operation for which this track was used, and must have been thoroughly familiar with the clearance and other physical surroundings. It is not contended that it was necessary for the plaintiff to ride on the side of the car. For these reasons we hold that in this case there was no negligence on the part of the defendant and no question for the jury. Reese v. Phila. & Reading Ry. Co., 239 U. S. 463, 36 Sup. Ct. 134, 60 L. Ed. 384, and Director General v. Bennett (C. C. A.) 268 Fed. 767, at page 771.

The above conclusions make it unnecessary to discuss the other questions.

It is therefore ordered that the judgment rendered herein be set aside, and the case remanded, and a new trial granted.