ERNEST J. GONEAU v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

April 4, 1924.

No. 23,810.

**Law of the case when construction of Federal statute is involved.**
    1. In actions predicated upon acts of Congress the rule of the law of the case will not be applied if, since the former decision, the Supreme Court of the United States has expressed an opinion contrary to such decision.

**Decision on former appeal the law of the case.**
    2. There being nothing inconsistent in Davis v. Wolfe, 263 U. S. 239, decided by the Supreme Court of the United States since the opinion in the former appeal herein was filed and relied on as precluding a recovery, the law of the case as announced in our former opinion should be applied, and accordingly the question whether the defective coupler was the proximate cause of plaintiff's injury was properly left to the jury.

**Issues properly submitted at trial.**
    3. There was no error during the trial or in the manner in which the issues were submitted.

**No misconduct of counsel.**
    4. The charge of misconduct of counsel is not sustained.

[1]Reported in 198 N. W. 403, 405.

**Verdict not excessive.**

    5. The damages are not so large as to warrant interference by this court.

After the former appeal reported in 154 Minn. 1, 191 N. W. 279, the case was tried before Stanton, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $20,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Marshall A. Spooner* and *John E. Palmer*, for appellant.

*Samuel A. Anderson*, for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

On a former appeal (154 Minn. 1, 191 N. W. 279) defendant's right to judgment upon a record substantially like the present was denied. This is conceded to be the law of the case now, unless the Federal Supreme Court has in the meantime expressed an opinion that is out of harmony therewith. For that court is the final authority involving the application of the acts of Congress upon which this action is predicated, and our duty is to follow its rulings even to disregarding the law of the case, which, after all, is only a rule of practice. Sands v. American Ry. Exp. Co. supra, page 25. Defendant claims that since our former decision the Supreme Court of the United States, in Davis v. Wolfe, 263 U. S. 239, 44 Sup. Ct. 64, 68 L. ed., filed November 12, 1923, has clearly announced a principle under which defendant is entitled to judgment, even though plaintiff was injured in the manner testified to by him. We think not.

In order to determine whether the decision referred to rules this case, the facts disclosed by the record must be kept in mind. They are not at all similar to those in the Wolfe case, and appellant does not so claim, but relies on the principle therein stated which is asserted to take plaintiff herein out of the protection of the Safety Appliance Act. It is undisputed that in the string of 70 cars, being

hauled in interstate commerce toward Superior, Wisconsin, there was one so out of repair that, after leaving the station of Gordon, it disengaged from the coupler of the car behind, releasing the air and thereby causing an emergency stop of both parts of the train. When this occurred the rear end of this car stood about 20 feet east of the west end of the bridge crossing the St. Croix river and about the same distance ahead of the rear portion of the train. The accident happened after dark on October 27, 1920, a rainy and snowy evening. As was his duty, plaintiff, the rear brakeman, went forward from the caboose to ascertain the cause of the mishap, and to restore normal conditions. He found the break and discovered that it was due to lack of bolts in the coupler or drawbar carrier iron, one end of which was wholly unfastened, the burr on the single bolt holding it having worked off. This let the drawbar down so that the coupler slid out of the knuckle of the car behind. The carrier iron is unquestionably a part of the coupling device. If it is displaced the drawbar with coupler drops down and disengages from the coupler of a car in good order, or cannot be coupled thereto. A passenger train was due at Gordon in a short time, and it was up to the crew of this freight train to get it out of the way. Plaintiff's duty was to couple up the parted train, and that speedily. To that end emergency repairs must be made so that the defective coupler would receive or fit into the one from which it parted. Plaintiff had no burr that could be used, so undertook to put shims between the coupler and carrier iron after it had been pulled in place. The train was then coupled together, but within a few feet it parted the same as before. Plaintiff again attempted to put the coupler in condition to couple. In so doing he claims that he put his knee or leg under the coupler to lift it in position, and, at the same time, took hold of the carrier iron, the free end of which had swung in under the car, due to the pressure of the heavy coupler or drawbar, and gave a hard pull to get it back in place. It gave way suddenly. Plaintiff lost his balance, fell off the bridge to the ground, some 30 feet below, and was injured.

Defendant contends that plaintiff was not engaged in a coupling operation when he met with his injury, but was repairing the car

and exactly in the same position as a repairman if the car had stood upon a repair track in some yard of defendant; that the train was at rest and there could be no attempt to use the coupler until after it had been repaired; and therefore the defective coupler as a matter of law could not be the proximate cause of the injury any more than in the cases of St. Louis & San Francisco Ry. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. Ed. 1290, and Lang v. New York Central R. Co. 255 U. S. 455, 41 Sup. Ct. 381, 65 L. ed. 729, where it was so held.

In those cases there was a collision with a bad order car with drawbar and coupler gone. It was not intended to couple onto or move the bad order car, but by mischance the car in one case and the locomotive in the other, upon which the employe rode, bumped into the bad order car and crushed him. Had the drawbar and coupler been present the person of the employe could not have been harmed, for he was in a safe place if a car equipped with a coupler, such as the law requires, had been bumped into. But here there was an intention to couple onto the defective car. It was imperative to move it immediately. Plaintiff had to prepare the coupler so it would couple with the other car. He was not a repair man. Emergency repairs which, at times, he as brakeman was called to do in order to couple up trains that break in two in transit, should not place him in the class of ordinary repair men doing their work with proper tools, appliances and protection. Here the defective coupler caused plaintiff to go between the cars and attempt to put it in condition to couple, and in that attempt he was injured. Under the circumstances he was actually engaged in a coupling operation. It is appropriate to refer to the former opinion and this statement therein [154 Minn. 5]: "It matters little whether he was attempting to make the coupling or right the position of the drawbar so that the coupling could be made automatically by impact. In either case the chain of events extended uninterruptedly from the defective appliance to the injury, and there was the direct causal relation which the law requires."

It seems to us the facts here bring the case more in line with Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456,

61 L. ed. 931, and Minneapolis & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. ed. 995, 'which, as said in Davis v. Wolfe, supra, authorize a recovery "if the failure to comply with the requirements of the Act [Safety Appliance Act] is a proximate cause of the accident, resulting in an injury to him [the employe] while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." McCalmont v. Pennsylvania R. Co. 283 Fed. 736; and McNaney v. Chicago R. I. & Pac. Ry. Co. 132 Minn. 391, 157 N. W. 650, are there cited with approval. Defendant points to the McCalmont case as identical with the present. But McCalmont was not injured while or because of making an emergency repair for the purpose of then moving the car. He went in between cars in a bad order yard to shorten a chain, by which, for lack of a drawbar and coupler, they were united. No hauling of those cars was in progress or in immediate contemplation. While he was adjusting the chain another train bumped against the cars and the injury resulted. The court held the defective coupler the condition and not the cause of the injury and hence a recovery was denied.

It seems to us that in the instant case the defective coupler may be said to be the cause, for the very attempt to prepare it for immediate coupling up and movement of the train directly caused plaintiff's fall. It also may be said that the court more confidently placed its denial of recovery upon McCalmont's disobedience of orders as being the sole proximate cause of his misfortune, citing Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 Sup. Ct. 406, 60 L. ed. 732.

In our opinion the facts of this case are more nearly akin to those in Erie R. Co. v. Russell, 183 Fed. 722, 723, 106 C. C. A. 160, than any other to which attention has been drawn. Certiorari therein was denied (220 U. S. 607, 31 Sup. Ct. 722, 55 L. ed. 607). This must be taken as an affirmance of the law as stated and applied by the circuit court of appeals. There the car with the defective coupler was not being hauled. It was stopped temporarily for the insertion of a knuckle, but it was intended to couple it to

other cars as soon as repaired. Russell was holding the knuckle in place with his back to three cars standing at some distance, while a fellow servant hunted for a pin that would fit. The standing cars, without any apparent cause, moved down upon Russell and crushed him. It was held that the trial court properly submitted to the jury the question whether presence of the defective coupler was the proximate cause of the accident.

Defendant also cites Phillips v. Pennsylvania R. Co. 283 Fed. 381, a two to one decision. There Phillips had repaired the bell on top of the locomotive, and when returning to the cab the steam dome popped as he passed over it causing him to fall. The popping of the steam dome was the sole and efficient cause of the injury, and was entirely disconnected with the repairing of the bell. Davis v. Hand, 290 Fed. 73, has no application, as we see it, to the facts of the case at bar.

We still are of the opinion that if plaintiff's story was true, and the jury so found, the verdict finding the defective coupler the proximate cause of the injury was justified, and that nothing has been stated by the Supreme Court of the United States since our former decision to warrant us in disregarding the binding effect of that decision. That this was a defective coupler cannot be denied. It was rendered defective because the carrier iron was not properly attached. Unless this iron was securely fastened at both ends, the coupler could not be kept in condition either to couple onto or stay coupled to another car. Instead of eight bolts, securely affixed with burrs as designed, this carrier iron had left only one bolt and that several inches too long, by which it hung to the car when plaintiff undertook to make the coupling of the parted train. Surely this was a clear violation of the act, and no error of which defendant may complain was made by leaving the jury to find whether or not the carrier iron was a part of the coupler. Without that iron the coupler fell below the standard height which the law requires. We think the car should be considered, as a matter of law, to have had a defective coupler.

The additional evidence at this trial left the same questions for the jury as upon the former trial. The charge was full and accurate.

Appellant's request, made during the plaintiff's argument to the jury that the court instruct the jury that the issues of contributory negligence and assumption of risk were not in the case, was complied with.

We find no merit in the claimed misconduct of counsel of the prevailing party. The argument to the jury is in part included in the settled case. It is forceful, but it is not pointed out wherein it departs from the evidence, or wilfully misinterprets requests which the court had indicated would be given the jury.

The verdict is attacked as excessive. It is generous. But already there has been a loss of wages in a sum exceeding one-fourth of the verdict. The fall was such that serious injuries were likely. According to plaintiff's experts, he will never again be able to perform manual labor. We cannot hold the verdict, approved by the learned trial court, so excessive as to indicate that the jury was actuated by passion or prejudice.

The order is affirmed.

On April 30, 1924, the following opinion was filed:

Per Curiam.

This is an appeal by defendant from the final judgment of the district court of Beltrami county, entered upon a verdict in favor of plaintiff in an action to recover for personal injuries, which action is based wholly upon the Federal Employers Liability Act in connection with the Federal Safety Appliance acts relating to automatic couplers on interstate cars. The questions presented are those decided by this court on an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial, which decision of this court affirming the order of the district court immediately precedes this opinion.

For the reasons stated in that opinion, the judgment entered in the district court is hereby in all things affirmed.

The parties having stipulated that if the judgment be affirmed there be no remittitur to the district court, the clerk will enter final judgment in this court in accordance with Rule XX.