ELIZABETH M. THOMAS, ADMINISTRATRIX

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.     Opinion January 12, 1929.

*Jacob H. Berman,*
*Edmund P. Mahoney,* for plaintiff.
*Perkins & Weeks,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DEASY, BARNES, JJ. DUNN, J., concurring in the result.

**468**

Philbrook, J.   This is an action on the case brought under the Federal Employers' Liability Act and the Federal Boiler Inspection Act, and acts amendatory thereof and additional thereto, to recover damages for the benefit of the widow of Oscar R. Thomas whose death was caused by an alleged breach of duty on the part of the defendant.

At the conclusion of the testimony, on motion of the defendant, a verdict was directed for the latter, to which direction the plaintiff seasonably presented exceptions and the same were duly allowed.

The writ, pleadings, stipulations, exhibits, and evidence arc made part of the bill of exceptions, together with the following docket entry dictated by the presiding justice: "Exceptions to the direction of a verdict for defendant filed and allowed. It is stipulated that if the plaintiff's exceptions to the direction of the verdict for the defendant are sustained, judgment is to be entered for the plaintiff, and the cause remanded to this court for assessment of damages."

There are five counts in the plaintiff's writ. In argument before this court counsel for the plaintiff discontinues as to the second, fourth and fifth counts, relying only on the first and third.

Without quoting either the first or third counts in their entirety we observe that in the first count the defendant's breach of duty is alleged to consist in supplying him with a locomotive engine which was wholly unfit, improper, and wholly unsafe to operate without unnecessary peril to life or limb, charging "that certain parts and appurtenances of said locomotive were so defective, worn, out of adjustment and alignment, and improperly and insufficiently lubricated, that said locomotive . . . developed a hot box, so-called, in the left trailer journal of said locomotive which became extremely and dangerously overheated."

In the third count the defendant's breach of duty is alleged to consist in providing and supplying the deceased with a locomotive engine which was wholly unfit and improper, and wholly unsafe for use, charging "that one of the axles of said locomotive engine was so defective, improperly adjusted, and out of alignment, and so lacking in proper lubrication facilities, that said axle . . . developed or caused a hot box, so-called, in the housing box of said

axle and became so extremely and dangerously heated that said housing box became inflamed. And the plaintiff avers that the deceased . . . proceeded to examine said housing box with the purpose of remedying the condition of same, and when he, the said deceased, was in the act of lifting the cover of said housing box, a flame of fire flashed toward him from said housing box, which forced and compelled him, the said deceased, in order to avoid coming in contact with the same, to jump backward away therefrom and on to an adjoining track of said defendant corporation," where he was struck by another locomotive moving in an opposite direction from that in which the deceased had been proceeding and instant death followed.

As to the testimony there is little dispute. The deceased, an engineer of nine or ten years' experience was operating freight train No. 621 travelling from Waterville toward Portland. At a point known as Kennebec Siding, which was about four miles north of Augusta, he discovered the hot box above described. At this siding there was a track of ample length to accommodate his train if it were necessary to investigate and remedy the trouble. Nothing of the kind was there done and the train moved on to Augusta. After doing some shifting at Augusta, using side tracks for so doing, he placed his train and locomotive on the main west bound track preparatory to proceeding toward Portland. He then alighted from his engine, voluntarily took a position between the main east and west bound tracks, between which there was a distance of only eight and one-half feet, lifted the cover of the hot box, and therefrom a flame darted out toward him. He quickly stepped backward toward the east bound track which brought him in front of passenger train No. 3 going toward Waterville, and running on schedule time, by which train he was struck and instantly killed. No breach of duty on the part of the defendant in the operation of passenger train No. 3 is alleged or claimed.

It is stipulated that the accident happened while the plaintiff's intestate was engaged in Interstate Commerce, that the defendant company, at the time of the accident, was engaged in operating a train in Interstate Commerce; and that the plaintiff's intestate was instantly killed.

The plaintiff claims a breach of duty on the part of the defend-

ant by reason of a violation of the Federal Boiler Inspection Act of February 17, 1911, Chap. 103, Sec. 2, U. S. Compiled Statutes, Sec. 8631 as amended in 1915. In the argument of plaintiff's counsel reliance is particularly based on Sec. 2 of the Boiler Inspection Act as now found in Volume 44, Part 1, U. S. Stat. at Large, Title 45, Chap. 1, Sec. 23, which provides as follows:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of Sections 28, 29, 30 and 32, and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." By the act of March 4, 1915, Chap. 169, Sec. 1, Congress provided that Section 2, above referred to, "shall apply to and include the entire locomotive and tender and all parts and appurtenances thereof."

Plaintiff's counsel calls attention to the fact that in the first and third counts, upon which he is relying, there is no allegation of negligence on the part of the defendant corporation, because, as he claims, the duty created by the Federal Boiler Inspection Act is absolute, and that negligence on the part of the defendant requires neither allegation nor proof by one proceeding under said act. He also claims that no allegation of due care on the part of the deceased is necessary because, if the defendant is guilty of a breach of its absolute duty under the Inspection Act as amended, it cannot avail itself of the defense of contributory negligence. He also claims that assumption of risk on the part of the deceased is not available to the defendant because, if the defendant is guilty of an absolute duty under the Inspection Act, it cannot avail itself of the defense of assumption of risk. In short he claims that the provisions of the Boiler Inspection Act make the employer an insurer of the safety of the place in which the employee works and of the appliances with which he works.

Cases in which damages are sought by reason of negligence on the part of a defendant, and those in which damages are sought by

reason of defendant's failure to perform a specified, absolute duty, are governed by widely differing legal rules.

The requirement of the Boiler Inspection Act is substituted for the common law rule which holds the employer to ordinary care to provide his employees a reasonably safe place in which, and reasonably safe appliances and machinery with which to work. It is as definite and certain as the common law rule. The act was passed to promote the safety of employees and is to be read and applied under the Federal Employers' Liability Act. Under the latter defendant is liable for any negligence charged to it which caused or contributed to cause the decedent's death; and such decedent will not be held guilty of contributory negligence, or to have assumed the risks of his employment, if a violation of Sec. 2 of the Boiler Inspection Act contributed to cause his death. By the last mentioned section, the defendant was absolutely bound to furnish what before, under the common law, it was its duty to exercise ordinary care to provide. But the burden is on the plaintiff to prove a violation of the Act by the defendant. *Baltimore & Ohio R. R. Co.* v. *Groeger*, 266 U. S., 521, 69 L. Ed., 419.

Under the Federal Statute, and upon authority of various cases cited, the plaintiff contends:

First: That the defendant used a locomotive, or permitted it to be used, the journal on the left trailer of which, was not in proper condition and safe to operate within the meaning of Section 2 of the Boiler Inspection Act as amended, in that said journal was so defective that, as it revolved in its bearings on the day of the accident, it produced unusual and excessive friction, causing an extreme and overheated condition which resulted in the combustion of flame; that this flame gushed out at the deceased while he was in the act of examining the condition of said journal, as it was his duty to do, and drove or forced the deceased to jump backward away from the same and onto the adjoining track where he was struck and instantly killed.

Second: That the defective condition of this journal, which produced the unusual and excessive friction, causing the extreme and overheated condition, which resulted in the combustion of flame and which, in turn, drove or forced the deceased to his death, was a contributing, proximate cause of death.

In connection with the second contention the plaintiff urges that

in a proceeding under the Federal Statute it is not necessary to establish the fact that the defendant's breach of duty was the sole, proximate cause of the injury or death, but that the defendant is liable in damages, under that Statute, if its breach of duty was a contributing, proximate cause.

Bearing in mind the principle that in actions under the Federal Employers' Liability Act, the kind and amount of evidence necessary to establish proof of a fact is controlled by the rules laid down by the United States Supreme Court, the plaintiff urges that the credibility of witnesses, the weight and probative value of evidence are to be determined by the jury and not by the judge, *B. & O. R. R. Co.* v. *Groeger*, supra, yet in the same opinion the Federal Court declares that "it is the duty of a judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different finding." Or, to use the language of the same court in *C. M. & St. P. Ry.* v. *Coogan*, 271 U. S., 472, "It is the duty of the trial judge to direct a verdict for one of the parties when the testimony, and all of the inferences which the jury reasonably may draw therefrom, would be insufficient to support a different finding."

The same court has also said that when the record leaves the claims of the plaintiff in the realm of speculation and conjecture it is not enough. *Patton* v. *T. & P. Ry. Co.*, 179 U. S., 658.

The plaintiff therefore argues that the real issue in the case, as it now stands before this court, is whether the testimony, together with all the inferences which the jury could justifiably draw therefrom, is so insufficient that it could not support a finding for the plaintiff.

The record plainly shows that a hot box on a locomotive engine, or on its trailer, would not alone produce conditions which would make the engine and its appurtenances such that it could not be used without "unnecessary peril to life or limb." In other words, the condition of the locomotive was not the sole proximate cause of the injury. Was that condition, under the circumstances in this case, a contributing, proximate cause of the injury? A contributing cause is one which under the *same circumstances* would *always* be an element aiding in the production of the accident. *Broschart* v. *Tuttle*, 58 Conn., 1, 17 ; 21 Atl. Rep., 925, 929 ; 11 L. R. A.,

33, 38. This definition has received judicial sanction, is plain, and sound. Under the burden imposed upon the plaintiff to show that the defendant was guilty of a breach of duty it was necessary for her to first prove that the condition of the locomotive was such that under the same circumstances it would always be an element aiding in the production of the accident, in order to satisfy the definition of contributory cause above given. This she has failed to do. It was also necessary for her to prove that the condition of the locomotive was the proximate cause of the injury. Proof that such condition was only a remote cause would be insufficient.

In the instant case the injury occurred because and when the deceased stepped in front of a moving train on the east bound track. Hence it is claimed by the defendant that this act of the deceased was an intervening cause between the existence of the hot box, or the condition of the locomotive which produced it, and the blow received from train No. 3, or in other words, that the hot box and the conditions which produced it were, at best, only remote causes.

Conversely the plaintiff claims that the existence of the hot box, or the condition of the locomotive which produced it, was the proximate cause of the injury. Under that portion of the argument of plaintiff's counsel relating to the unsafe condition of the journal of the engine as a contributing, proximate cause of death, he cites *Kidd* v. *Rock Island Ry. Co.,* 310 Mo., 1; *Lehigh Valley R. R. Co.* v. *Beltz,* 10 Fed. (second series), 74; *Lehigh Valley R. R. Co.* v. *Huben,* 10 Fed. (second series), 78; *B. & O. R. R. Co.* v. *Groeger,* supra; *Davis* v. *Hand,* 290 Fed., 73.

In *Kidd* v. *Chicago, R. I. & P. Ry. Co.,* supra, an engine drawing a freight train was stalled on the east bound main track. Another train proceeding on the same track came nearly to but stopped about 150 to 200 feet north of and behind the stalled train. The stalled train was being drawn by an engine numbered 3002, which, it was claimed, was in a defective condition which caused steam to escape therefrom in large amount and with excessive noise. The engine on the second train bore the number 3022. Kidd was engineer on 3022. While the stalled engine was standing on the track the sixteen consecutive hours of service of the crew of the second train, prescribed by Federal Statute, expired. The crew of that train therefore was released from further duty and its conductor

with his brakeman, left their train and walked along the right of way toward the yard office for the purpose of registering. These men walked south on the west bound track until they had passed the steam escaping from engine 3002. This walking on the west bound track was done "to keep from getting too close to the steam." Kidd came along slightly in the rear of the other members of the crew of the second train, walked on the west bound track to avoid the steam, and as he was emerging therefrom was struck by train 57 running on the west bound track. The train which thus struck and killed Kidd was about two hours and forty-five minutes late. By reason of a train order Kidd had notice that train 57 was late and had not passed the point of the fatal accident.

In that case the defendant railway company was charged with negligence and violation of the Federal Boiler Act, in permitting engine 3002 to become defective, and to be used and operated in service while not in a reasonably proper condition, and so as to emit steam and vapor, thereby causing the deceased to be on the west track, obstructing his view, and that because of the noise of escaping steam and use of a blower, due to defects in engine 3002, the deceased was prevented from hearing the ordinary running, operation, and approach of train 57, wherefore it was charged that the defendant failed to furnish and provide the deceased a reasonably safe place to work and to walk in the performance of his duties. The defendant's answer generally denied the allegations in the plaintiff's position and alleged that the deceased met his death by reason of his own negligence and that he assumed the risk due to his employment. In that case judgment was for the plaintiff. Many elements therein arose which it is unnecessary to consider in this opinion. The question particularly germane to the present discussion is, was engine 3002, with its escaping steam and unusual noise a proximate cause of the fatality? It was there held that the use of said engine, in its then condition, rendered the defendant railroad liable, "provided that its use was in part a proximate cause of the injury," and it was also held that the defective condition of engine 3002 was a proximate cause of the injury sustained by the deceased. In reaching this conclusion the court stated that by reason of the condition of the engine, an unusual amount of steam was caused to escape from the cylinder cocks, accompanied by a loud

and unusual noise accentuated by use of the engine blower; and that the escaping steam created apprehension that the steam would probably burn one who was walking by the engine, if between the two tracks, and that in order to avoid the apprehensive danger the employees walked on the west bound track to avoid being burned by the steam. In that case it must be borne in mind that the deceased had finished his work and was simply walking to the railroad office for the purpose of registration.

In order to reach their conclusion therefore the Missouri Court was virtually obliged to hold that the company, under the National Boiler Act, was liable not only for failure to furnish safe place and appliances while the employee was actually at work, but to furnish safe place for its employees to walk when going to or returning from work.

We feel that this interpretation of the National Boiler Act was carried too far; that neither in letter or spirit does that act hold a railroad company responsible for failure to perform an absolute duty after the employee has ceased his work.

In the Kidd Case the Missouri Court cited *Shafir* v. *Sieben* (Mo. Sup.), 233 S. W., 419; 17 A. L. R., 637, in which the question of proximate cause was considered where a plaintiff meeting with an obstruction negligently placed by one defendant on a sidewalk and extending almost to the center of the street was thereby caused to pass around the obstruction onto the roadway of the street used for vehicular traffic, where he was injured by an automobile owned and negligently operated by another defendant. In its reasoning the court said in the last cited case that, "The cause of the injury in this case necessarily consisted of two elements: (1) the presence of the plaintiff in the path of the automobile which struck him; and (2) the blow it delivered against his body. Both of these causes were present and in full operation at the instant of the injury. His presence was due to the wrongful act of these defendants, and the blow was delivered by the wrongful act of the driver of the machine. Neither would or could have occurred without the operation of the other at the same time. Both were commingled in the single act of the injury. The argument by which it is attempted to separate them is specious and artificial."

In the latter case the National Boiler Act was not involved.

There were two tortious conditions acting simultaneously and in that case the court correctly held that both were commingled in the single act of the injury. This fact, together with other elements involved, differentiates the latter case from one involving the National Boiler Act.

City of *Louisville* v. *Hart's Administrator*, 143 Ky., 171; 136 S. W., 212; 3 L. R. A. (N. S.), 207; falls into the same category with *Shafir* v. *Sieben*, supra, the National Boiler Act not being under consideration, and two tortious acts occuring simultaneously.

*Lehigh Valley R. R. Co.* v. *Beltz*, 10 Fed. (second series), 74, is a case in which the deceased was in charge of a freight train and was riding in the cab of one of the defendant's engines when the main pin broke, causing the driving and parallel rods to fly about, disabling the engine and punching a hole in the boiler, causing a violent emission of steam, hot water and coals of fire in the cab. Those on the engine jumped in an effort to save their lives. In so doing the plaintiff's intestate received bodily injuries from which he died. The National Boiler Act was under consideration, and the circuit court distinctly stated that in cases of this class it must appear that the failure of the carrier to comply with the act was the proximate cause of the accident which resulted in the injury; that liability arises only when the failure to obey the act is the proximate cause of the injury.

In passing it is interesting to observe that of the three circuit judges before whom that case was argued one dissented on the ground that the ruling was inconsistent with *Baltimore & Ohio* v. *Groeger*, supra, which had been decided in the Supreme Court of the United States on January 5, 1925, while the Lehigh Valley Case was decided November 2, 1925. In the Lehigh case it was held that the defective locomotive was the proximate cause of the death. We hold this to be sound law under the circumstances of that case but it has one material difference from the case at bar. In that case there was plainly a proximate causal relation between the defective locomotive and the plaintiff's intestate. He jumped from the engine to save his life from destruction caused by the explosion. In the case at bar Thomas did not attempt to remedy the defect in his locomotive at a safe place on Kennebec Siding nor at a safe place when

his locomotive was on a side track after doing shifting work; but he deliberately placed his engine on the west bound track and voluntarily took a dangerous position between the west bound and east bound tracks in which to do his work, a place not furnished by the defendant but taken at his own risk, by his own voluntary act, assuming risks incident to such an act and contributing to the fatal result by his own negligence.

*Lehigh Valley R. R. Co.* v. *Huben*, 10 Fed. (second series), 78, was a case arising in connection with the fatality in *Lehigh Valley R. R. Co.* v. *Beltz*, supra, and the cases were argued together. In the Huben case after Beltz and his companions had jumped from the engine it continued on its course and ran into a passenger train with the result that Huben received injuries which caused his death. In the latter case the Court states that the only question there necessary to consider was whether Huben had established by sufficient evidence that he was engaged in interstate commerce at the time of his death. The decision of that question in that case therefore has no bearing upon the case at bar.

In *B. & O. R. R. Co.* v. *Groeger*, supra, a locomotive engineer was killed by the explosion of a boiler. This explosion was caused in whole or in part by an unsafe and insufficient condition of the crown sheet of the boiler and the railroad's failure to have a fusible plug in that crown sheet. The court there held that the railroad company was liable if its breach of duty contributed to cause the death. And the court remarked that if the boiler was in the condition described by a witness it would not be unreasonable to conclude that a breach of duty of the defendant caused or contributed to cause the explosion; and that it did not conclusively appear that the failure of the deceased properly to operate the engine was the sole cause of the explosion. In that case death was caused by a boiler explosion, which explosion under the law of cause and effect was related to the imperfect condition of the crown sheet and it might be properly said that under the same circumstances the imperfect condition would always be an element aiding in the production of the accident and hence be a contributory cause. Not so as to a hot box as in the case at bar.

*Davis* v. *Hand*, 290 Federal, 73, is a case where the deceased, a fireman, had completed his duty of coupling cars which because of

defective couplers had required him to go between cars to line up the couplings. The train was then at a standstill, and it was his duty to give the engineer the signal to move out, in such a manner and from such a position as he might select, and this he did from a position either on the sill at the end of the car or standing on the ground between the car and a coal bin with insufficient clearance, of which he had knowledge, either position being dangerous, and was crushed between the car and the bin when the train went ahead on his signal; and it was there held that the proximate cause of his death was not any violation of the safety appliance act but his own carelessness in taking a dangerous position from which to signal. This last case is more favorable to the contention of the defendant than to the plaintiff.

As bearing upon the question of causal connection between the hot box and the fatal accident the defendant submits authorities which clearly indicate the great weight of authority in supporting the view that there was no causal connection between the hot box and the injury which caused death.

In *Phillips* v. *Pa. R. R. Co.*, 283 Fed. Rep., 381, the deceased was a fireman on a locomotive attached to a train which was standing at a water plug. After adjusting the spout he obtained a wrench from the engineer and went forward over the boiler to repair the automatic bell ringer from which a cotter pin had dropped out, and when stepping over the steam dome the safety valve popped, he lost his balance, fell, and was injured. In that case a verdict was directed for the defendant and in sustaining this ruling the court said that the defective condition of the bell ringer was negligence per se, but that the defective bell ringer was the occasion and not the proximate cause of the accident.

In *McDougall* v. *A. T. & S. F. R. R. Co.*, 186 Pac., 1028, an engineer was killed when he was leaning out of the gangway to look back at the condition of a hot box on an engine immediately following his in the train. The court dismissed the case on the ground that the hot box was not the proximate cause of the plaintiff's death, nor did it have anything to do with his head coming in contact with a bridge girder; that the proximate cause of death was the engineer's negligent act in leaning out of the engine cab while passing through the bridge.

In *Watson* v. *G. S. & F. R. R. Co.*, 136 S. E., 921, Watson was killed while walking along a small rod on the tank of the engine for the purpose of placing a lantern on the tank. The court held that although the plaintiff's writ showed the decedent to be engaged in an act so obviously dangerous that a person of ordinary prudence would not have undertaken it, that if a violation of a safety statute had occured the decedent's negligence was immaterial, provided such violation had a causal connection with the injury; but that the placing of the lantern had no causal connection with the violation, was merely a compliance with a private rule of the company, and no liability under the statute could be predicated thereon. In the case at bar Thomas was remedying the hot box under a rule of the defendant that the engineer must perform such duties.

In *Taton* v. *Seaboard A. L. R. R. Co.*, 113 Southern, 671, suit was brought to recover for the death of an engineer. The engine had a defective driving box wedge which had been fixed by the engineer. The plaintiff contended that the engineer was leaning out so as to observe the wedge and coming in contact with the rack used to load wood on engines, was knocked from his engine and killed. The defendant pleaded assumption of risk as the wood rack had been in the same position for a long time and the engineer was familiar with it. The court held that there was no causal connection between the defect of the engine and the decedent's death but that the proximate cause of the death was decedent's coming in contact with the wood rack, and as there was no violation of the Federal Statute, assumption of risk was a complete defense. In the case at bar it will be remembered that train Number 3 was due to arrive on the east bound track, a fact known to Thomas by reason of his train order.

It seems plain to this court that under the law as stated in the latter group of cases, together with other principles of law applicable to the case at bar, the plaintiff has failed to show that the hot box was a contributing proximate cause of the death of her intestate, that the ruling of the court below in ordering a verdict for the defendant was correct and the mandate must be.

*Exceptions overruled.*