[1] Reported 288 N.W. 229.
Defendant was convicted of violating "An ordinance to license and regulate hawkers, peddlers and canvassers, and the selling of goods from door to door in the City of Waseca, Minnesota." He appeals from an order denying his blended motion for amended findings and conclusions of law, or, if that be denied, for a new trial.
Section 1 of the ordinance provides:
"That no person, as hawker, peddler or canvasser for the sale of any property, except where such property is sold at wholesale to dealers in such articles, shall sell or offer to sell, canvass for, or sell for future delivery, any goods, wares, or merchandise, within the limits of the City of Waseca, without first having obtained a license to do so as in this ordinance provided."
Section 2 provides the procedure to be followed to secure the license pursuant to the requirements of section 1; section 3 provides for punishment for failure to procure such license; section 4 repeals inconsistent ordinances; and section 5 fixes the time when the ordinance was to take effect. (It was in effect many years prior to the time of defendant's prosecution, having been duly approved by the mayor and published in 1914.)
The complaint charges that defendant on April 20, 1937, did "solicit, canvass and peddle from house to house, certain goods, wares and merchandise without a license so to do."
The evidence was furnished largely, though not entirely, by or in defendant's behalf; hence we find no substantial conflict in the record. The facts as established thereby are as follows: Defendant is employed by the Jewel Tea Company, an Illinois corporation there domiciled but having and maintaining a branch factory at La Crosse, Wisconsin. Its business is that of selling coffee, tea, extracts, spices, soap products, and many other articles on a direct-to-consumer basis. Defendant's salary was $24 per week, and he was also paid an additional sum based upon sales volume. He obtained all of his supplies, such as order books, reports, *Page 157 
and the like, from his employer. His employer also provided him with an automobile or truck by means of which he delivered to his employer's customers goods previously ordered by them. The manager at the La Crosse branch was his direct superior. From him as such he received instructions with respect to the routes to be maintained and the customers upon whom he should call. There were some 14 towns and cities designated, and Waseca was one of them. There he spent the last three secular days every alternate week. His business was to solicit and take orders for future delivery of his employer's goods. These orders were consolidated at the end of the week, and such consolidated order or requisition was then forwarded to the La Crosse branch. The goods so ordered were then shipped by rail from La Crosse to Owatonna in large packages or cartons and from there transferred to defendant's home in Owatonna, where the shipments were broken up and the original packages in which previously ordered goods were contained were then placed on shelves. As these items of property were to be delivered they were then taken from defendant's shelves and placed in the auto truck for delivery to the respective customers. When the goods were delivered to the customer he was authorized to demand and accept the purchase price, for which he made due accounting to his employer.
It sometimes happened that an order could not or was not delivered to the particular customer who had ordered the goods. In such event defendant took the ordered items back to the truck and transported them to his basement in Owatonna, using such article or articles to fill subsequent orders of the same type. The amount of goods so handled was nominal only, not exceeding one out of every hundred sales.
Defendant contends that the mentioned ordinance was, as applied to the facts in this case, in direct violation of U.S. Const. art. I, § 8. While he attacks the ordinance on other grounds, we conclude that the issue just mentioned presents the nub of the controversy. *Page 158 
1-2. It has long been established law that "the negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce." As such commerce, neither the state nor local authority may burden it with license or other taxes. Real Silk Hosiery Mills v. City of Portland,268 U.S. 325, 335, 45 S.Ct. 525, 526, 69 L. ed. 982, 985; Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592,30 L. ed. 694; Brennan v. Titusville, 153 U.S. 289,14 S.Ct. 829, 38 L. ed. 719; Stockard v. Morgan, 185 U.S. 27,22 S.Ct. 576, 46 L. ed. 785; Caldwell v. North Carolina, 187 U.S. 622,23 S.Ct. 229, 47 L. ed. 336; Norfolk W. Ry. Co. v. Sims,191 U.S. 441, 24 S.Ct. 151, 48 L. ed. 254; Rearick v. Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L. ed. 295; Crenshaw v. Arkansas, 227 U.S. 389, 33 S.Ct. 294,57 L. ed. 565; Rogers v. Arkansas, 227 U.S. 401, 33 S.Ct. 298,57 L.ed. 569; Stewart v. Michigan, 232 U.S. 665, 34 S.Ct. 476,58 L. ed. 786.
In this case it is clearly established that the goods ordered by the various customers of the tea company were in the state of Wisconsin when the orders were taken. Later, pursuant to the orders so taken, they were shipped into the state and received by defendant at his home in Owatonna. Up to that point, at least, there can be no doubt that the transaction was strictly one in interstate commerce. This being so, it follows that neither the state nor any of its subdivisions could impose —
"direct burdens upon interstate commerce, that is, they may not regulate or restrain that which from its nature should be under the control of the one authority and be free from restriction save as it is governed in the manner that the national legislature constitutionally ordains. This limitation applies to the exertion of the State's taxing power as well as to any other interference by the State with the essential freedom of interstate commerce. Thus, the States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived *Page 159 
from it. Similarly, the States may not tax property in transit in interstate commerce." Minnesota v. Blasius, 290 U.S. 1, 8,9, 54 S.Ct. 34, 36, 78 L. ed. 131, 135.
In Alpha Portland Cement Co. v. Massachusetts, 268 U.S. 203,45 S.Ct. 477, 69 L. ed. 916, 44 A.L.R. 1219, the court stated the legal problem to be (268 U.S. 216, 45 S.Ct. 480,69 L. ed. 923):
"May a State impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of two factors — the proportion of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transactions?"
Referring to Cheney Bros. Co. v. Massachusetts,246 U.S. 147, 153, 154, 38 S.Ct. 295, 62 L. ed. 632, 636, where the state had demanded an excise of a foreign corporation which transacted therein only interstate business, the excise being laid upon the corporation, and where the Supreme Court had held the excise to be "essentially a tax on doing an interstate business and therefore repugnant to the commerce clause," the court said [268 U.S. 217]:
"Here also the excise was demanded on account of interstate business. A new method for measuring the tax had been prescribed, but that cannot save the exaction. Any such excise burdens interstate commerce and is therefore invalid without regard to measure or amount." (Citing numerous cases.)
Continuing, the court said (268 U.S. 218, 45 S.Ct. 481,69 L.ed. 924):
"It must now be regarded as settled that a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the Commerce Clause; and the Fourteenth Amendment does not permit taxation of property beyond the State's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the *Page 160 
tax. So far as the language of Baltic Mining Co. v. Massachusetts, 231 U.S. 68, 87, 58 L. ed. 127, 134,34 Sup. Ct. Rep. 15, tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."
3. Here, as in Shafer v. Farmers Grain Co. 268 U.S. 189,202, 45 S.Ct. 481, 486, 69 L. ed. 909, 916, —
"there can be no justification for the exercise of a power that is not possessed. If the evils suggested are real, the power of correction does not rest with" the state "but with Congress, where the Constitution intends that it shall be exercised with impartial regard for the interests of the people of all the States that are affected."
4. Such also was the holding in Brennan v. Titusville,153 U.S. 289, 302, 14 S.Ct. 829, 832, 38 L. ed. 719, 723:
"* * * we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the State without the assent of Congress, and that the silence of Congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free."
In the late case of Gwin, White Prince, Inc. v. Henneford,305 U.S. 434, 435, 59 S.Ct. 325, 326, 83 L. ed. 272, 274, "the single question" raised was whether a "tax measured by the gross receipts of appellant from its business of marketing fruit shipped from Washington to the places of sale in various states and in foreign countries is a burden on interstate and foreign commerce prohibited by the commerce clause of the Federal Constitution." The Washington supreme court had sustained the tax upon the theory (305 U.S. 437,59 S.Ct. 327, 83 L. ed. 275) "that appellant's activities * * * in promoting the commerce were a local business, subject to state taxation as is other business carried on in the state," but the Supreme Court reversed and held that the tax, "though nominally imposed upon appellant's activities in Washington, by the very method of its measurement reaches the entire interstate *Page 161 
commerce service rendered both within and without the state and burdens the commerce in direct proportion to its volume."
(Instructive and interesting notes on this phase may be found in 18 Minn. L.Rev. pp. 475 and 476, also at pp. 890 and 891. Nor should one overlook the very thorough and illuminating discussion set forth in Rottschaefer, Constitutional Law, c. 9, "The Commerce Clause and State Powers.")
5. The next question presented is whether there was a "break" in the interstate transaction between La Crosse, Wisconsin, and Waseca, Minnesota. That is to say, did the property "come to rest" at Owatonna so as to thereby become subject to the power of the state to impose a tax or other exaction? We think cases such as Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34,78 L.ed. 131, and Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299,57 L. ed. 615, are clearly distinguishable. In the Blasius case the facts found were that the livestock taxed had reached the end of the interstate transportation; it "was ended" when delivery took place at the South St. Paul stockyards for sale on that market. Blasius became the absolute owner by purchase there and was thus (290 U.S. 12, 54 S.Ct. 38, 78 L. ed. 137) —
"free to deal with them as he liked. He could sell the cattle within the State or for shipment outside the State. He placed them in pens and cared for them awaiting such disposition as he might see fit to make for his own profit. The tax was assessed on the regular tax day while Blasius thus owned and possessed them. The cattle were not held by him for the purpose of promoting their safe or convenient transit. They were not in transit. Their situs was in Minnesota where they had come to rest."
Bacon v. Illinois, 227 U.S. 504, 57 L. ed. 615, involved similar basic facts.
Perhaps the leading case upon this phase is that of Caldwell v. North Carolina, 187 U.S. 622, 47 L. ed. 336. The ordinance there involved was in its essential elements the same as the one here *Page 162 
presented. There the agent of a portrait company solicited orders which when procured were sent to his company in a state other than the one in which the orders were taken. The orders were for pictures and frames into which they should go. The pictures and frames were placed in separate boxes and shipped in bulk to the agent in North Carolina, who upon receipt thereof broke the original packages in which sent, placed each picture in the frame designed for it, and thereupon delivered the picture so framed to the respective purchasers. Mr. Justice Shiras, speaking for a unanimous court, said (187 U.S. 632,633, 23 S.Ct. 229, 233, 47 L. ed. 341):
"Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. * * * It cannot escape observation that efforts to control commerce of this kind, in the interest of the States where the purchasers reside, have been frequently made in the form of statutes and municipal ordinances, but that such efforts have been heretofore rendered fruitless by the supervising action of this court. The cases hereinbefore cited disclose the truth of this observation." A reversal followed.
Again, in Stewart v. Michigan, 232 U.S. 665, 58 L. ed. 786, we have much the same situation as here. There a license tax was sought to be imposed upon a nonresident merchant traveling from place to place within the state and soliciting orders by sample, lists, and catalogs for goods which were afterwards shipped into the state in carload lots to his order. He later delivered, pursuant to the orders, the respective item of goods purchased by each customer. The Michigan court sustained the ordinance, but the Supreme Court reversed, citing Crenshaw v. Arkansas, 227 U.S. 389, 57 L. ed. 565, and other cases there reviewed. *Page 163 
There are many other cases bearing on this phase such as Rearick v. Pennsylvania, 203 U.S. 507, 51 L. ed. 295; Rogers v. Arkansas, 227 U.S. 401, 57 L. ed. 569; Western O. R. Co. v. Lipscomb, 244 U.S. 346, 37 S.Ct. 623, 61 L. ed. 1181; and Binderup v. Pathe Exchange, Inc. 263 U.S. 291, 44 S.Ct. 96,68 L. ed. 308. And see 4 Dillon, Municipal Corporations (5 ed.) § 1356. All of these cases sustain defendant's position. Defendant also cites cases in which his employer's company was directly involved, as follows: Jewel Tea Co. Inc. v. City of Camden, 171 S.C. 353, 172 S.E. 307; City of Lee's Summit v. Jewel Tea Co. (8 Cir.) 217 F. 965; Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 165 S.W. 743; and City of Anniston v. Jewel Tea Co. 18 Ala. App. 4, 88 So. 351. In all of them it is apparent from the facts recited that the same method of procedure employed in the instant case was also employed there. In each case the court sustained the tea company's contention that in doing its business in this manner it was engaged in interstate commerce. Nor do we find that the Federal Supreme Court has in any way limited the holdings of its former decisions heretofore cited. As late as Minnesota v. Blasius (1933) 290 U.S. 1, 10, 54 S.Ct. 34, 37, 78 L. ed. 136, Chief Justice Hughes said that the —
"mere changes in the method of transportation do not affect the continuity of the transit. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied." (Citing many cases.)
The trial court in its memorandum said that Town of Sellersburg v. Stanforth, 209 Ind. 229, 198 N.E. 437, "is in point." An examination of the facts there appearing does not justify this view. There the appellee (Stanforth) testified (209 Ind. 233, 198 N.E. 439):
Q. "You bought these goods from the Great American Tea Company and then delivered them? *Page 164 
A. "I would not say that. Yes; I guess so, too. I do not settle for them [the goods] until a week later. It is the same thing."
And further (p. 234):
"When I order these goods they are charged to me. * * * I am charged with the amount my orders call for; I pay the company all; if my business calls for $100.00 I give them a hundred; they give me my commission out of the hundred."
The court in commenting upon this phase had this to say (209 Ind. 235, 198 N.E. 440):
"The company looked to appellee as the one solely responsiblefor the purchase price of the goods. He understood that he was obligated to pay for all goods delivered to him unless he should return the goods; and his obligation was secured by a $500.00 bond. Inability or refusal of a purchaser to pay theappellee did not affect the latter's obligation to pay thecompany.
"If the appellee became the owner of the goods in bulk when he received them from the company at its office it necessarily follows that he solicited purchasers of his own goods and wasconducting a strictly intrastate business as a peddler. The fact that he took orders and then purchased the goods to fill the orders from a foreign vendor would not change the fact thathis business was that of an itinerant retailer, whose method of doing business brought him within the purview of the ordinance and made him subject to the policy regulations therein." (Italics supplied.)
More in point with the court's view is the case of Loverin 
Brown Co. v. Tansil, 118 Tenn. 717, 102 S.W. 77. The holding, however, in that case call no longer be said to be the law, for in the later case of Western O. R. Co. v. Dalton, 131 Tenn. 329,174 S.W. 1138 (where the Tennessee court followed the Tansil case), the Federal Supreme Court in Western O. R. Co. v. Lipscomb, 244 U.S. 346, 37 S.Ct. 623, 61 L. ed. 1181, reversed. The syllabus *Page 165 
contains the meat of the decision and reads as follows (61 L.ed. 1181, 1182):
"A foreign corporation which shipped into the state a tank car of oil and a carload of steel barrels containing just the quantity of oil and the number of barrels necessary to fill orders from two towns in the state, which had been taken by a traveling salesman, billing the cars to one town, at which the orders from there were to be and were filled, and then rebilling such cars to the other town, where the orders from that place could be and were filled, — could not be subjected to a privilege tax without violating the commerce clause of the Federal Constitution, the intrastate transportation being both in fact and in law a connected part of a continuous interstate movement."
11 Am. Jur., Commerce, § 49, states, we think, the true rule:
"The interstate character of a sale, made on a contract for the purchase of goods which are to be shipped from another state, is not affected by the fact that the goods are consigned to the shipper or the agent to whom the order is given and are to be delivered by the agent. This is true even though the agent collects the purchase price of the goods from the purchaser and maintains an office which is used as headquarters while soliciting orders and as a distributing point after the goods are shipped. The transaction is not deprived of its interstate character by the employment of another agent or agency for the delivery of the goods purchased or by the fact that goods ordered by several purchasers are shipped in bulk to the agent and are delivered by the agent to the respective purchasers after breaking the bulk."
6. Obviously this case involves a federal question. As such it is our duty to give full effect to the opinions of our highest court, for "decisions of the United States Supreme Court are final as to what constitutes interstate commerce." Wyman, Partridge Holding Co. v. Lowe (1937) 65 S.D. 139, 141,272 N.W. 181, 182. Our own cases are in accord. Sands v. American Ry. Exp. Co. 159 Minn. 25, 26, 198 N.W. 402; Goneau v. M. St. P. *Page 166 S. S. M. Ry. Co. 159 Minn. 41, 42, 198 N.W. 403, 405; Dial Toaster Corp. v. Waters-Genter Co. 181 Minn. 606, 615,233 N.W. 870.
It is therefore our conclusion that the order for review must be and it is reversed and the trial court directed to set aside the conviction and discharge defendant.
So ordered.