R. H. WHITE COMPANY *vs.* JOHN MURPHY & others.

Suffolk.    April 14, 1941. — January 2, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Labor and Labor Union. State Labor Relations Law. Contract,* Validity.
*Picketing. Jurisdiction,* Labor. *Unlawful Interference. Equity Juris-
diction,* Unlawful interference, Labor, Picketing. *Constitutional Law,*
Freedom of speech. *Public Policy. Words,* "Peaceful picketing."

A closed shop contract, made by an employer with a labor union whose
members were not a majority of his employees and because of his fear
of labor trouble with that union, after there had been hearings, but
before a decision, by the labor relations commission upon a petition
by another union, whose members comprised a majority of such em-
ployees, for its certification under § 5 (c) of G. L. c. 150A, inserted
by St. 1938, c. 345, § 2, as representatives for collective bargaining,
was invalid as calling for unfair labor practices as defined in the
statute, and was not a bar to later certification of the majority union
by the commission.
Refusal by a court of equity to enforce a closed shop contract which was
invalid as calling for unfair labor practices was not an infringement
upon the jurisdiction given the labor relations commission by § 6 (a)
of G. L. c. 150A.
There is no conflict between the public policy of this Commonwealth
as defined in the State labor relations act and that of the United
States as defined in the National labor relations act.
Injunction, in a suit brought by an employer of picketing of his places
of business by a labor union to compel him to perform a closed shop
contract which was unlawful because calling for unfair labor prac-
tices in violation of § 4 (3), (5), of G. L. c. 150A did not violate the
constitutional guaranty of freedom of speech, although the picketing
did not include any act of violence or any oral request to refrain from
business with the employer, the picketers merely wearing arm bands
with the legend, "Labor Dispute."

BILL IN EQUITY, filed in the Superior Court on March 7,
1941.

The suit was heard by *Buttrick,* J.

*H. R. Donaghue,* for the defendants.

*C. B. Rugg,* (*P. Shuebruk* with him,) for the plaintiff.

*S. S. Grant,* (*F. F. Cohen* with him,) for the interveners.

DOLAN, J.   This is a bill in equity in which the plaintiff
seeks to enjoin the defendants, who are officers and mem-

bers of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and officers and members of certain affiliated "locals" and are representatives from the Teamsters International Council No. 10, a Massachusetts division of the Brotherhood, from picketing the plaintiff's places of business in Cambridge and Boston. A temporary restraining order was entered on March 7, 1941. The defendants filed an answer and counterclaim seeking specific performance of a closed shop contract with the plaintiff dated January 31, 1941. Officers of the "New England Joint Board, United Retail and Wholesale Employees of America," hereinafter referred to as the C. I. O. union, were permitted to intervene in behalf of that union.

The judge filed findings of fact and entered an order for final decree dismissing the defendants' counterclaim and permanently enjoining certain named officers or members of the brotherhood, and of local 829 and local 82, and representatives of the Teamsters International Council No. 10, "from doing any of the following acts for the purpose of compelling the complainant to comply with the contract dated January 31, 1941 . . . (a) picketing complainant's place of business or in any manner causing . . . [its] places of business to be picketed; (b) refusing to deliver or urging others to refuse to deliver goods to or from any of . . . [its] places of business." Thereafter, at the request of the parties, the judge reserved and reported "the evidence, the findings of fact and order for decree and all question[s] of law therein for the consideration of" this court. Prior to this action by the judge, the defendants filed a stipulation that "pending the final decision" by this court, they would not strike or picket the plaintiff's place of business for the purpose of obtaining members or to enforce the contract dated January 31, 1941, between the plaintiff and locals 82 and 829. Final decrees were entered dismissing the bill as to four of the defendants. An interlocutory decree was also entered temporarily enjoining the plaintiff from negotiating for or entering into any contract written or oral with the C. I. O. union respecting any conditions of employment of the employees involved.

The evidence is reported in full, hence questions of fact as well as of law are brought before this court, whose duty it is under the familiar rule to examine the evidence and to decide the case upon its own judgment as to the facts, giving due weight to the findings of the trial judge, which will not be reversed unless plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 83, 84, and cases cited. *Kevorkian* v. *Moors,* 299 Mass. 163, 166. *Culhane* v. *Foley,* 305 Mass. 542, 543.

Material facts found by the judge may be summarized as follows: The plaintiff conducts a retail department store in Boston, and maintains a warehouse in Cambridge for the storage of its goods. About one hundred fifty persons are employed in the warehouse. The brotherhood and its locals 829 and 82 are affiliated with the American Federation of Labor. On December 23, 1937, the plaintiff and local 829 entered into a closed shop contract which expired January 31, 1939. Two similar contracts were entered into between them, the second expiring on January 31, 1941. This contract contained a clause providing that a list of desired changes in the contract for the following year should be submitted within sixty days prior to the date of expiration of the contract, and that negotiations for a new contract should be begun within thirty days prior to that date.

On November 25, 1940, local 829 of the brotherhood notified the plaintiff that it wished to negotiate a new contract for the year 1941. On November 22, 1940, however, the C. I. O. union had filed a petition with the State labor relations commission requesting that, under G. L. c. 150A, § 5 (c) (inserted by St. 1938, c. 345, § 2), it be certified as the representative of all persons working in or out of the plaintiff's warehouse, with certain exceptions, for the purpose of collective bargaining. This petition was withdrawn in December, 1940, but a new petition to the same effect was filed by the C. I. O. union on January 13, 1941. This petition was heard by the commission on January 27, 28, and 29, 1941. Representatives of the plaintiff, of locals 829 and 82, and of the C. I. O. union were present at the hearings. The plaintiff took a neutral position, being willing to

bargain with whichever union should be certified by the commission. After hearing and argument the commission took the petition under advisement.

In the meantime the representatives of locals 829 and 82 of the brotherhood had presented a contract to the plaintiff which included a closed shop agreement. The plaintiff desired to include in the contract a provision making it subject to the outcome of the proceedings for certification before referred to. The representatives of locals 829 and 82 refused so to do. During the month of January certain of the named defendants "and all the other officers and members of said locals 829 and 82, and of . . . council No. 10," acted in concert to compel the plaintiff to execute, and thereafter to comply with, a closed shop contract with said locals 829 and 82 covering all the plaintiff's warehouse employees, with certain exceptions hereinafter referred to. This request was refused. On January 29, 1941, the members of local 829 voted to authorize a committee of three business agents, which included two of the defendants, to call a strike against the plaintiff and to cause its places of business to be picketed unless the plaintiff signed the closed shop agreement with locals 829 and 82.

On January 31, 1941, representatives of locals 829 and 82 and council No. 10, on their behalf demanded that the plaintiff sign the closed shop contract that they had presented to it, and stated that unless the plaintiff complied the matter would be referred to council No. 10 for action. The contract was executed by the plaintiff and locals 829 and 82 on that day. The plaintiff, however, did not then know that a strike had been authorized, but owing to the fear of labor trouble signed the contract although the proceedings for certification of a collective bargaining agency were still pending. At the time that the contract was signed neither local 829 nor local 82 represented a majority of the warehouse employees. Then and at all subsequent times the C. I. O. union in fact represented a majority of the warehouse employees.

On February 4, 1941, the commission rendered a decision on the petition of the C. I. O. union determining that the

unit appropriate for the purpose of collective bargaining consisted of all persons working in or out of the plaintiff's warehouse, excluding persons engaged in selling on the second floor, carpenters and those engaged in a supervisory capacity, and directing that an election by secret ballot be held on February 12, 1941, to determine whether a majority of the employees in said unit had designated the C. I. O. union as their representative for the purposes of collective bargaining. On February 10, 1941, the commission rendered a supplemental decision directing that the election be held to determine whether the employees desired to be represented by the C. I. O. union, or by local 829, or by neither.

On February 11, 1941, the defendant Harrington, acting in behalf of locals 829 and 82, demanded that the plaintiff discharge all employees in its warehouse who were not members of local 829 by 5:30 P.M. on that day, and stated that unless the plaintiff did so action would be taken against it by the defendants. The election was postponed by order of the commission to February 21, 1941, at which time it was held. One hundred twenty-two employees voted that they desired to be represented by the C. I. O. union and three employees for representation by local 829. Eleven ballots cast by employees were protested. On February 25, 1941, the commission, pursuant to the provisions of G. L. c. 150A, § 5 (c), certified that the C. I. O. union had been selected by a majority of the warehouse employees as their representative for purposes of collective bargaining and that under § 5 (a) it was their representative for those purposes.

On February 28, 1941, and again on March 3, 1941, three of the individual defendants, representing locals 829 and 82, demanded that the plaintiff comply with the contract entered into on January 31, 1941, and discharge all employees in its warehouse who were not members of local 829. The judge further found that certain of the defendants and certain officers and certain members of locals 829 and 82 and council No. 10, in concert, attempted to compel the plaintiff "in violation of the State labor relations law, G. L. c. 150A, § 4 (3), to discharge employees in its . . .

warehouse and, in violation of . . . § 4 (5), to refuse to bargain collectively with the representatives" duly selected by the employees and certified by the commission, and that to that end they unlawfully established and maintained a picket line about the plaintiff's main store in Boston and its warehouse in Cambridge; and by so doing induced persons delivering goods to and from the store and warehouse to refuse to go through the picket lines and to refuse to make deliveries. There was undisputed evidence, which we accept as true, that the pickets wore arm bands with the legend "Labor Dispute A. F. of L." printed thereon, but there was no evidence that they engaged in any acts of violence or made any oral request to any customer or truck driver to refrain from engaging in business relations with the plaintiff. The judge also found that as a result of the action of the defendants practically all incoming deliveries to the plaintiff's warehouse in Cambridge and to its store in Boston, and all outgoing deliveries from its store to its customers, were prevented on March 7, 1941, and that the plaintiff "has made every reasonable effort to settle the dispute by negotiation and with the aid of all governmental machinery of mediation or voluntary arbitration."

The issues presented for determination are whether the contract in question is invalid and, if so, whether peaceful picketing by the defendants for the purposes of inducing the plaintiff to perform the contract properly can be enjoined.

The policy of the governing statute in this Commonwealth and that of the National labor relations act is the same. In G. L. c. 150A, § 1, the policy of the Commonwealth is thus set forth: "It is hereby declared to be the policy of the commonwealth to eliminate the causes of certain substantial obstructions to the free flow of industry and trade and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms

and conditions of their employment or other mutual aid or protection." See also U. S. C. Sup. V, Title 29, § 151. *National Licorice Co.* v. *National Labor Relations Board*, 309 U. S. 350, 362. A petition for certification under c. 150A raises the question as to the proper exclusive bargaining representative of the employees. A contract entered into by an employer with one of the unions would not necessarily settle that question, since under the statute it is the employees who are to decide the question. In *International Association of Machinists* v. *National Labor Relations Board*, 311 U. S. 72, where the question concerned the power of that board to order the employer to bargain with the United Automobile Workers (C. I. O.), despite the claim of a unit of the American Federation of Labor under a closed shop contract, the court held that the board was justified in refusing to give effect to the closed shop contract, saying at page 80: "We are dealing here not with private rights . . . nor with technical concepts pertinent to an employer's legal responsibility to third persons for acts of his servants, but with a clear legislative policy to free the collective bargaining process from all taint of an employer's compulsion, domination, or influence." See also *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 33, 34, and cases cited; *Amalgamated Utility Workers* (*C. I. O.*) v. *Consolidated Edison Co. of New York*, 309 U. S. 261, 263. And in *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 239, the court said: "the continued operation of the contracts is necessarily subject to the provision of the law by which representatives of the employees for the purpose of collective bargaining can be ascertained in case any question of 'representation' should arise." It is settled that certification imposes the affirmative duty upon the employer to bargain with the certified union, and the negative duty of abstaining from bargaining with any other union. *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 44, 45. *Virginian Railway* v. *System Federation No. 40*, 300 U. S. 515, 546, 547. *Texarkana Bus Co. Inc.* v. *National Labor Relations Board*, 119 Fed. (2d) 480, 484.

In the present case the commission found that the contract in question was not a bar to an election and certification. See cases cited in 2 Teller, Labor Disputes and Collective Bargaining, § 335, pages 902, 903. The findings of the judge support that conclusion, since he found that, at the time that the contract was executed, neither of the other parties, locals 829 and 82, in fact represented a majority of the warehouse employees, but that at that time (January 31, 1941,) and at all subsequent times, the C. I. O. union represented a majority of these employees. These findings are supported by evidence, to the effect that on November 22, 1940, a majority of the employees involved had signed application cards for membership in the C. I. O. union and thereby became members of that union, and had not resigned at the time of the hearing before the judge. These findings were not plainly wrong. In *National Labor Relations Board* v. *Louisville Refining Co.* 102 Fed. (2d) 678, 680, certiorari denied *sub nomine Louisville Refining Co.* v. *National Labor Relations Board*, 308 U. S. 568, it was held that it was established that a union had actually been designated as the bargaining representative of a majority of the employees involved, by the fact that signed applications for membership in that union had been executed by them. See also *National Labor Relations Board* v. *Somerset Shoe Co.* 111 Fed. (2d) 681, 687, and cases cited. It follows from what has been said that the contract was invalid as one entered into by the plaintiff with locals of a union that did not in fact represent a majority of the plaintiff's warehouse employees, and that, having been entered into while there was a dispute as to representation and the petition for certification was pending before the commission, it was not a bar to certification. *Black Diamond Steamship Corp.* v. *National Labor Relations Board*, 94 Fed. (2d) 875, certiorari denied, 304 U. S. 579. See also cases cited in 2 Teller, Labor Disputes and Collective Bargaining, § 335, page 904. To uphold the contract in these circumstances would be to sanction an unfair labor practice, to set aside the action of the commission and thus to defeat the purposes of the statute. See *International Association of Ma-*

*chinists* v. *National Labor Relations Board,* 311 U. S. 72, 75. Unfair labor practices "cannot operate to change the bargaining representatives previously selected by the untrammeled will of the majority." *Oughton* v. *National Labor Relations Board,* 118 Fed. (2d) 486, 490.

The defendants contend, however, that, even though the contract be invalid, it is the function of the commission and not of the courts to set it aside, because the commission is given exclusive jurisdiction by G. L. c. 150A, § 6 (a), to bring proceedings to prevent unfair labor practices. We are of opinion, however, that by refusing to enforce the contract the judge did not infringe the jurisdiction of the commission. It was appropriate to consider the question of the validity of the contract in determining whether it should be enforced, and there is nothing in the labor relations act restricting that inherent power of a court of equity. See *Devon Knitwear Co. Inc.* v. *Levinson,* 173 Misc. (N. Y.) 779, 781; 2 Teller, Labor Disputes and Collective Bargaining, § 271, and cases cited.

In so far as the order for final decree made by the judge directed that the defendants' counterclaim be dismissed, there was no error.

The question remains whether the picketing here complained of can be enjoined properly. With relation to this subject matter the defendants contend that, even though the picketing be held to be for an unlawful purpose, and we so hold, it may be carried on if peaceful and that this right is protected by the First and Fourteenth Amendments of the Constitution of the United States, securing and guaranteeing to its citizens among other rights that of freedom of speech.

In this respect the sole question is whether under the constitutional guaranty of freedom of speech a right exists to picket the plaintiff's places of business for the purpose of persuading or inducing it to discharge a majority of its employees in violation of the provisions of the State labor relations act, which like the National labor relations act is specifically expressed to be based upon broad grounds of public policy.

The defendants have relied largely upon *Thornhill* v. *Alabama*, 310 U. S. 88, *Carlson* v. *California*, 310 U. S. 106, and *American Federation of Labor* v. *Swing*, 312 U. S. 321, in support of their contention that peaceful picketing though for an unlawful purpose is not itself unlawful, and may not be enjoined. We do not adopt this view, being of opinion that there is nothing in those cases to support the proposition that freedom of speech includes the right, by picketing, to persuade or induce an employer to violate the statute by engaging in an unfair labor practice, and thus to set at naught the declared public policy of the Commonwealth, the foundation of the statute itself. In none of these cases just referred to was the picketing carried on for an unlawful purpose. No statutory violations were involved in the *Swing* case. The issue there was whether "the constitutional guarantee of freedom of discussion [was] infringed by the common law policy of a state forbidding resort to peaceful persuasion through picketing merely because there is no immediate employer-employee dispute" (page 323). All that was decided in that case was that such a policy did abridge the exercise of freedom of speech by peaceful picketing. The *Thornhill* case simply decided that a statute forbidding any person, without just cause, to go near or to loiter about any place of business for the purpose of, or with the intention of, influencing other persons not to buy from, deal with, or be employed at such place of business; or to picket a place of lawful business for the purpose of impeding, interfering with or injuring such business, was invalid on its face, since freedom of speech embraces at least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. In that case the only statute that was alleged to have been violated was thus held invalid. In the instant case it has not been contended that the State labor relations act is invalid in any of its provisions. In *Senn* v. *Tile Layers Protective Union*, 301 U. S. 468, a statute was involved which permitted peaceful picketing in the street, without intimidation or coercion, fraud, violence or breach of the peace or threat thereof,

and the statute was held consistent with the Fourteenth Amendment of the Federal Constitution. The court, however, stated that without special statutory authority members of a union might make known the facts of a labor dispute "for freedom of speech is guaranteed by the Federal Constitution," but the court also said: "The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence but absence of any unlawful act" (pages 478–479). It thus appears that the *Thornhill, Carlson* and *Swing* cases are distinguishable in the fact that in none of them did it appear that the picketing was in violation of any valid statute or ordinance or that it was for an unlawful purpose. Nor does it appear from an examination of *Miller's Inc.* v. *Journeyman Tailors Union Local No. 195,* 128 N. J. Eq. 162 (reversed, *per curiam, sub nomine Journeymen Tailors Union Local No. 195* v. *Miller's, Inc.* 312 U. S. 658) that the picketing was for an unlawful purpose. In that case the injunction was granted solely on the ground that there was not a labor dispute since no controversy existed between the employer involved and his employees. We are of opinion that none of the cases relied upon by the defendants, which we have already discussed, is authority for any principle that picketing by workmen in concert to persuade or induce an employer to do an unlawful act, one condemned by statute as an unfair labor practice and contrary to the defined public policy of the Commonwealth and of the nation, is permissible under the constitutional guaranty of freedom of speech, or otherwise.

In the instant case the contract in question, as before pointed out, was invalid. The State labor relations act (G. L. c. 150A, § 4 [3] [5]) provides in part that it shall be an unfair labor practice for an employer "By discrimination in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization . . ." and "To refuse to bargain collectively with the representatives of his employees, subject to the provisions of subsection (a) of section five." Section 5 (a), (b) and (c) provide as follows: "(a) Representatives designated or

selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment; provided, that any individual employee or a group of employees shall have the right at any time to present grievances to their employer. (b) The commission shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. (c) Whenever a question affecting industry and trade arises concerning the representation of employees, the commission may investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation, the commission shall provide for an appropriate hearing upon due notice either in conjunction with a proceeding under section six or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives."

To conform to the defendants' demands, compliance with which they sought to effect by picketing, it is manifest that the plaintiff would have to engage in an unfair labor practice as defined by the statutes just referred to, and in contravention thereof to discharge over three fourths of the employees involved, and to bargain with the defendants under the contract in question, which was of no force and effect, and to refuse to bargain with the certified representative of the employees as determined in the proceedings of the commission and as required in law; in brief, to do something it cannot legally do.

We have already referred to the *Senn* case in which it was said that the term peaceful picketing implies "not only absence of violence but absence of any unlawful act." We think that it was an unlawful act for the defendants

to picket the plaintiff's places of business for the purpose of persuading or inducing it to conform to the contract in question, and thus to engage in an unfair labor practice condemned by the governing statutes. We are of opinion that the constitutional guaranty of freedom of speech does not include a right by workmen to picket the premises of an employer to persuade or induce action by him that would be in violation of a defined public policy of the Commonwealth, a public policy the same as that defined in the National labor relations act, which has been given judicial recognition as a constitutional measure in *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1. There is no conflict between the public policy of this Commonwealth as defined in our labor relations acts and that defined by the United States as determined by Congress in the National labor relations act. In each the public policy defined is the same.

It follows from what has been said that the picketing in the present case was for an unlawful purpose. There was therefore no error in the order for final decree made by the judge. *Bloedell Donovan Lumber Mills* v. *International Woodworkers of America, Local No. 46,* 4 Wash. (2d) 62. *Wisconsin Employment Relations Board* v. *Milk & Ice Cream Drivers & Dairy Employees Union, Local No. 225,* 238 Wis. 379. *Oberman & Co. Inc.* v. *United Garment Workers of America,* 21 Fed. Sup. 20. *Montgomery Ward Employees' Association* v. *Retail Clerks International Protective Association, Local No. 47,* 38 Fed. Sup. 321. Am. Law Inst. Restatement: Torts, § 794. Compare *Fur Workers Union, Local No. 72* v. *Fur Workers Union No. 21238,* 105 Fed. (2d) 1, 16, affirmed, *per curiam, sub nomine Fur Workers Union No. 21238* v. *Fur Workers Union, Local No. 72,* 308 U. S. 522.

Final decree is to be entered in accordance with the order therefor made by the judge.

*Ordered accordingly.*