GEORGE A. GLOVER v. MINNEAPOLIS BUILDING TRADES COUNCIL AND OTHERS.[1]

July 9, 1943.

No. 33,414.

[1]Reported in 10 N. W. (2d) 481.

534

*Sam J. Levy,* for appellant.

*John A. Goldie,* for respondents.

*Joseph A. Padway* and *James A. Glenn* filed a brief *amicus curiae* on behalf of the American Federation of Labor.

PETERSON, JUSTICE.

The question is whether or not the complaint states a cause of action entitling plaintiff to injunctive relief.

Plaintiff is engaged in the business of building and selling houses. In constructing them he employs union labor, except for furnace installation and sheetmetal work, which he does himself. When he is unable to do the work himself, he lets it to a contractor who employs union labor. Plaintiff is an experienced furnace and sheetmetal worker and holds a license as a gravity warm-air heating installer issued under an ordinance of the city of Minneapolis.

Defendants are certain building trades unions, including the sheetmetal workers local, whose members do furnace installation and sheetmetal work, a general organization with which the unions are affiliated, and certain officers and representatives of the bodies mentioned. They demanded of plaintiff that he cease doing the furnace and sheetmetal work himself and that he give it to some person or firm who would employ only union labor to do the same. This plaintiff refused to do.

Upon plaintiff's refusal to accede to the demands made upon him, defendants caused pickets to walk in the street in front of his premises carrying banners proclaiming that the work being done was nonunion and unfair to the building and construction trades affiliated with the American Federation of Labor in Minneapolis and vicinity.

The workmen employed on the job quit and notified plaintiff that they would not return to work so long as the picketing continued. Plaintiff alleges that as a consequence of the picketing he was un-

able to obtain skilled workmen to finish the house picketed and to construct others which he planned to build.

No unfair labor practice in violation of Minn. Labor Relations Act, § 11, Minn. St. 1941, § 179.11 (Mason St. 1941 Supp. § 4254-31), or other unlawful act on the part of the defendants is alleged.

Plaintiff contends that the picketing is unlawful "under any theory of the law." Defendants claim that their acts constitute an exercise of freedom of speech secured to them by the U. S. Const. Amend. XIV. If the federal constitution secures to defendants the right to picket in the manner complained of, it is determinative of this controversy regardless of what the state law is. In Bakery & Pastry Drivers, etc. v. Wohl, 315 U. S. 769, 774, 62 S. Ct. 816, 818, 86 L. ed. 1178, the court made this clear by stating:

"\* \* \* one need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive."

The constitution of the United States according to its express provision is the supreme law of the land. The decisions of the Supreme Court of the United States, as the final arbiter of the meaning and application of the federal constitution, are binding on state courts (City of Waseca v. Braun, 206 Minn. 154, 288 N. W. 229; Dahl v. Collette, 202 Minn. 544, 279 N. W. 561), even though inconsistent with their prior decisions. Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167, 7 N. E. (2d) 30, 110 A. L. R. 1411; 14 Am. Jur., Courts, p. 336, § 117. Since the right claimed by defendants is one based on the federal constitution, the decisions of the Supreme Court of the United States control decision in the instant case.

The decisions of the Supreme Court of the United States hold that peaceful picketing under the circumstances set forth in the complaint is part of freedom of speech secured by the Fourteenth Amendment. In Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. ed. 1229, the facts were identical with those

in the case at bar, except that Senn employed a helper to assist him in doing the work. Senn was a small tile-laying contractor who hired a helper. The tile layers union requested him to unionize his shop, which he agreed to do if he might continue to work as a journeyman tile layer in conducting his business. The union refused to relax its rule forbidding an employer to work at the trade. Thereupon Senn refused to unionize, and the union picketed his place of business with banners proclaiming that he was unfair to the union. Such picketing was permissible under the state anti-injunction act of Wisconsin, which contained a provision similar to our anti-injunction act, Minn. St. 1941, § 185.10(5), (Mason St. 1940 Supp. § 4260-4[e]), prohibiting any court from issuing an injunction to restrain any person or persons interested in a labor dispute from giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence. The court not only upheld the Wisconsin statute authorizing such conduct, but held that under the Fourteenth Amendment the defendants had a constitutional right to do such acts in the absence of statute. It said (301 U. S. 478, 57 S. Ct. 862, 81 L. ed. 1229):

"Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution."

Further, holding that the unions might constitutionally induce Senn to refrain from exercising his right—the same as plaintiff's here—to work in his business with his own hands, the court said (301 U. S. 481, 57 S. Ct. 863, 81 L. ed. 1229):

"The unions acted, and had the right to act as they did, to protect the interests of their members against the harmful effect upon them of Senn's action."

That is the precise situation involved here. The Senn case is decisive of the instant one.

In Bakery & Pastry Drivers, etc. v. Wohl, 315 U. S. 769, 62 S. Ct. 816, 86 L. ed. 1178, *supra*, picketing to compel peddlers of bakery

goods to hire members of a union as relief men to do the work of selling done by the peddlers themselves was held to be a constitutional right. An injunction of a state court enjoining such picketing was held to violate the right of free speech guaranteed by the Fourteenth Amendment.

In Thornhill v. Alabama, 310 U. S. 88, 102, 60 S. Ct. 736, 744, 84 L. ed. 1093, 1102, holding a statute prohibiting peaceful picketing unconstitutional, the court said:

"In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."

On the same day the court said in Carlson v. California, 310 U. S. 106, 60 S. Ct. 746, 84 L. ed. 1104, that freedom of speech included the publicizing of facts in a labor dispute in a peaceful way *by banner*.

In Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc. 312 U. S. 287, 293, 61 S. Ct. 552, 555, 85 L. ed. 836, 841, 132 A. L. R. 1200, 1203, it was held that picketing will be restrained where it is attended with acts of violence and the continuation of the picketing excites fears that violence will be resumed; but the court reaffirmed the rule in the Thornhill case, saying: "Peaceful picketing is the workingman's means of communication."

In A. F. of L. v. Swing, 312 U. S. 321, 61 S. Ct. 568, 85 L. ed. 855, the court held that the constitutional guarantee of freedom of discussion by peaceful picketing is not limited to cases where the controversy is between an employer and his employes.

The case of Carpenters & Joiners Union, etc. v. Ritter's Cafe, 315 U. S. 722, 62 S. Ct. 807, 86 L. ed. 1143, is not in point. In that case the plaintiff, through an independent contractor, was erecting a building about a mile distant from his cafe, where he employed union labor. The contractor employed nonunion labor. Defendants picketed the cafe, charging plaintiff with being unfair. The court expressed adherence to the rules of the Thornhill and Swing

cases, *supra*, but distinguished them upon the ground that the picketing in the Ritter case was not at the place of the dispute, but a mile distant therefrom. The case arose under a Texas statute prohibiting such picketing. In upholding the statute the court held that picketing may be restricted (315 U. S. 739, 62 S. Ct. 815, 86 L. ed. 1143) "to the 'area of the industry within which a labor dispute arises.'" The difference between the Ritter and the instant case is that here the picketing was confined to the actual scene of the dispute, and in the Ritter case it was not.

The decisions of the Supreme Court of the United States and of the state courts prior to the Senn and Thornhill cases are no longer controlling authority. Cases like Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. ed. 254, 27 A. L. R. 375, and Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, laid down the rule that the Fourteenth Amendment secures to every person the fundamental right to work unmolested in his own business; but the later cases above cited, like those of Senn and Wohl, hold that employes, singly or in combination as unions, have a constitutional right to exert economic pressure on a person to induce him to forego his right of working and to let his work to others. The theory of the later cases is that work is a legitimate subject of economic competition and that employes may use peaceful means in such competition to obtain work and job security. *Cf.* New Negro Alliance v. Sanitary Grocery Co. 303 U. S. 552, 304 U. S. 542, 58 S. Ct. 703, 82 L. ed. 1012 (picketing to compel employment of negroes) ; Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. ed. 1229, and opinion of Wisconsin court, *Id.* 222 Wis. 383, 400, 268 N. W. 270, 277, 872. Our decision in Roraback v. Motion Picture M. O. Union, 140 Minn. 481, 168 N. W. 766, 169 N. W. 529, 3 A. L. R. 1290, follows the rules laid down in Truax v. Raich, *supra,* and rests squarely upon the proposition that picketing to induce a person to forego the right to work in his own business is an invasion of the right, secured to him by the Fourteenth Amendment, to do such work. The Roraback case is opposed to the later decisions of the Supreme

Court of the United States above mentioned holding that employes may picket to induce a person to forego that right. Where the decisions of the Supreme Court of the United States in matters of federal law arising under the constitution and laws of the United States are opposed to our prior decisions, it is our plain duty to disregard our decisions and to conform to those of the Supreme Court of the United States, whose decisions are binding and conclusive on us, as the ultimate authority in such matters. Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167, 7 N. E. (2d) 30, 110 A. L. R. 1411, *supra*. In the instant case we are bound to follow the decisions of the Supreme Court of the United States and to disregard our prior decisions so far as they announce a different rule.

Cases holding that picketing to compel an employer to commit an unfair labor practice may be enjoined are not in point. The state labor relations acts make violations thereof unlawful and subject to restraint by injunction. The reason for such decisions is that picketing will not be permitted to compel another to commit a violation of law. Among such decisions are R. H. White Co. v. Murphy, 310 Mass. 510, 38 N. E. (2d) 685, and Retail Clerks' Union, etc. v. Wisconsin Emp. Rel. Board, 242 Wis. 21, 6 N. W. (2d) 698. See note 26 Minn. L. Rev. p. 895. In the instant case, defendants do not seek to induce plaintiff to violate the law by committing an unfair labor practice.

Affirmed.

MR. JUSTICE MAGNEY, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.