STATE of Minnesota, Respondent,

v.

Amy Lynn BRIST, Appellant.

No. A10–0979.

Supreme Court of Minnesota.

Feb. 22, 2012.

Lori Swanson, Attorney General, Joan M. Eichhorst, Assistant Attorney General, St. Paul, MN; and David Hauser, Otter Tail County Attorney, Fergus Falls, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Steven P. Russett, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

STRAS, Justice.

Appellant Amy Lynn Brist appeals from her convictions on six controlled substance crimes. Brist argues that the admission of an audio recording of a statement made by her nontestifying coconspirator to a confidential government informant during a drug transaction violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Because we are bound by *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), which is identical to this case in all material respects, we affirm Brist's convictions.

### I.

A confidential informant ("CI") working with the West Central Minnesota Drug Task Force made five separate controlled buys of methamphetamine from Brist's

boyfriend, Johnny Garcia. After the fifth controlled buy, the police arrested Brist and Garcia. The State charged Brist with six counts of aiding and abetting and conspiracy to commit controlled substance crimes.

At trial, the district court allowed the State to introduce, over Brist's objection, an audio recording of a conversation between Garcia and the CI during the first controlled buy. The CI captured the conversation with Garcia through a hidden, on-body audio recorder. The district court ruled that Garcia's statements in the recording were admissible against Brist under Minn. R. Evid. 801(d)(2)(E) because the State had shown by a preponderance of the evidence that Garcia made the statements in the course of and in furtherance of a conspiracy between Brist and Garcia.[1]

The recording begins with the following exchange:

CI: Got any (inaudible) or what.

Garcia: (inaudible words)

CI: All I can get together is two bills now.

Garcia: Yeah?

CI: (inaudible words)

Garcia: A quarter that she owes ya. I don't know ... I don't know what you want. I got (inaudible words) probably a gram inside.

Garcia's statement, "[a] quarter that she owes ya," was an important piece of evidence connecting Brist to the conspiracy. The CI testified at trial that Garcia made the statement while handing the CI two packages containing a total of .9 grams of methamphetamine and the statement referenced a prior transaction in which Brist had sold subpar methamphetamine to the CI. The State then used Garcia's statement in its closing argument to argue that Brist and Garcia were members of a conspiracy to sell controlled substances. Garcia did not testify at trial, and Brist had no prior opportunity to cross-examine him.

A jury found Brist guilty of each of the six counts with which she was charged. The district court convicted Brist of all six counts and sentenced her to 68 months in prison. The court also ordered Brist to participate in chemical-dependency treatment during her incarceration and to reside in a halfway house after her release from prison.

The court of appeals affirmed in part and reversed in part. *State v. Brist,* 799 N.W.2d 238 (Minn.App.2011). The court concluded that the admission at trial of the statement in question, "[a] quarter that she owes ya," did not violate Brist's Confrontation Clause rights because the statement was nontestimonial. *Id.* at 242 (citing *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). The court therefore affirmed Brist's convictions. *Id.* However, the court reversed and remanded for the district court to modify Brist's sentence because the district court lacked authority "to impose conditions on incarceration or supervised release." *Id.* at 242–43 (concluding that such authority "resides with the Commissioner of Corrections"). We granted Brist's petition for review on the question of whether admission into evidence of Garcia's record-

---

1. Minnesota Rule of Evidence 801(d)(2)(E) provides:

   A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of the party. In order to have a coconspirator's declaration admitted, there must be a showing, by a preponderance of the evidence, (i) that there was a conspiracy involving both the declarant and the party against whom the statement is offered, and (ii) that the statement was made in the course of and in furtherance of the conspiracy.

ed statement violated the Confrontation Clause.

## II.

When the State seeks to introduce an out-of-court statement by the defendant's coconspirator under Minn. R. Evid. 801(d)(2)(E), a two-part test applies to determine admissibility. First, the statement "must satisfy the requirements of Minn. R. Evid. 801(d)(2)(E)." *State v. Larson*, 788 N.W.2d 25, 36 (Minn.2010). Second, the introduction of the statement "must not violate the Confrontation Clause of the Sixth Amendment." *Id.* Brist does not challenge the admissibility of Garcia's statement under Rule 801(d)(2)(E), nor does Brist argue that the Minnesota Constitution's Confrontation Clause, Minn. Const. art. I, § 6, presents a separate bar to the admissibility of Garcia's statement. Therefore, the sole issue before us is whether the admission of the statement, "[a] quarter that she owes ya," violated Brist's Sixth Amendment rights.

The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 400–08, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (incorporating the protections of the Confrontation Clause into the Due Process Clause of the Fourteenth Amendment).

The Supreme Court of the United States is the "final arbiter of the meaning *and* application of" the United States Constitution. *Glover v. Minneapolis Bldg. Trades Council*, 215 Minn. 533, 535, 10 N.W.2d 481, 482 (1943) (emphasis added); *see also Arizona v. Evans*, 514 U.S. 1, 8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (stating the Court has "final authority" over interpretation of the United States Consti-

tution). As a result, Supreme Court precedent on matters of federal law, including the interpretation and application of the United States Constitution, is binding on this court. *Dayton Co. v. Carpet, Linoleum & Resilient Floor Decorators' Union*, 229 Minn. 87, 100, 39 N.W.2d 183, 190–91 (1949). We have therefore recognized that, when we consider matters arising under the United States Constitution, we are bound to apply Supreme Court decisions that are on point and are good law. *See Meadowbrook Manor, Inc. v. City of St. Louis Park*, 258 Minn. 266, 273, 104 N.W.2d 540, 545 (1960); *City of Waseca v. Braun*, 206 Minn. 154, 165, 288 N.W. 229, 234 (1939); *State v. Weyerhauser*, 72 Minn. 519, 519–20, 75 N.W. 718, 718 (1898).

### A.

A Supreme Court decision is on point when it resolves the federal question presented for our review. Two factors guide our analysis in determining whether a decision is on point. The most important consideration is whether the Supreme Court decision resolved the same, disputed question of federal law. *See Meadowbrook Manor*, 258 Minn. at 272, 104 N.W.2d at 545 (concluding that notice by newspaper publication of a special assessment on real property did not comply with the Due Process Clause of the Fourteenth Amendment based on three Supreme Court decisions, even though this court had previously upheld notice by publication in similar circumstances); *Glover*, 215 Minn. at 535–38, 10 N.W.2d at 482–83 (holding that peaceful picketing is protected through the First and Fourteenth Amendments on the basis of five Supreme Court decisions examining the question). That is because the Supreme Court has the final word on the meaning of federal law. *Glover*, 215 Minn. at 535, 10 N.W.2d at 482. We also consider the degree of similarity between

the facts of the Supreme Court case and the facts of the case before us. *See id.* at 535–36, 10 N.W.2d at 482–84 (reasoning that a Supreme Court decision was "binding and conclusive" on this court because it involved materially identical facts). That is because the Supreme Court is also the "final arbiter" on the application of federal law. *Id.* at 535, 10 N.W.2d at 482.

■ Based on the factual and legal identity of *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), and this case, the State argues that the admissibility of Garcia's recorded statement in this case is controlled by *Bourjaily.* In *Bourjaily,* Bourjaily's coconspirator agreed to purchase cocaine from a confidential government informant in a hotel parking lot. *Id.* at 173–74, 107 S.Ct. 2775. During the tape-recorded conversation arranging the drug buy, the coconspirator explained to the informant that he would retrieve the cocaine from the informant's car and then transfer the drugs to Bourjaily, who would be waiting in a parked car nearby. *Id.* After the coconspirator transferred the cocaine to Bourjaily, FBI agents arrested them both. *Id.*

Bourjaily argued that the government's use at trial of his nontestifying coconspirator's tape-recorded statements violated his Sixth Amendment right to confront the witnesses against him. *Id.* at 181–82, 107 S.Ct. 2775. The Supreme Court disagreed. *Id.* at 183–84, 107 S.Ct. 2775. The Court first held that the district court had properly admitted the statements under Fed.R.Evid. 801(d)(2)(E).[2] *Bourjaily,* 483 U.S. at 181, 107 S.Ct. 2775. The Court then held that admission of the statements into evidence did not violate the Confrontation Clause because the requirements for admissibility of evidence under Fed.

R.Evid. 801(d)(2)(E) are "identical" to the requirements for admissibility under the Confrontation Clause. *Bourjaily,* 483 U.S. at 182–84, 107 S.Ct. 2775. As the Court stated:

> [C]o-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion. Accordingly, we hold that the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of [Fed.R.Evid.] 801(d)(2)(E).

*Bourjaily,* 483 U.S. at 183–84, 107 S.Ct. 2775 (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Delaney v. United States,* 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462 (1924); *United States v. Gooding,* 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693 (1827)).

Both *Bourjaily* and this case involve the same federal constitutional question: whether the recorded statements of a non-testifying coconspirator—otherwise admissible as nonhearsay under materially identical evidentiary rules—are admissible at trial against another coconspirator without violating the Confrontation Clause. Not only is the legal question identical, but as Brist's counsel conceded at oral argument, the relevant facts of the two cases are materially indistinguishable. Both involve a confidential government informant who participated in a drug transaction with two coconspirators, one of whom consummated the transaction in a parking lot while the other waited nearby. Both involve incriminating statements made unwittingly by

---

**2.** Federal Rule of Evidence 801(d)(2)(E) and Minnesota Rule of Evidence 801(d)(2)(E) are identical in all relevant respects.

one coconspirator to the informant, who was secretly recording the conversation. Finally, neither the coconspirator in *Bourjaily* nor Garcia testified at trial or were previously cross-examined. Accordingly, given the legal and factual similarities between *Bourjaily* and this case, we conclude that *Bourjaily* is directly on point and we are therefore bound to follow *Bourjaily* if it remains good law.

### B.

■ Having concluded that *Bourjaily* is directly on point, the remaining question is whether *Bourjaily* is still good law. Brist argues that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), constituted a "sea change" in the Supreme Court's Confrontation Clause jurisprudence and that *Crawford* and its progeny have overruled *Bourjaily*.

*Crawford* no doubt altered the constitutional analysis for determining whether an out-of-court statement is admissible into evidence at a criminal trial. Prior to *Crawford*, the admissibility of an out-of-court statement under the Confrontation Clause turned primarily on evidentiary rules and "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (concluding that no independent Confrontation Clause analysis is necessary if a statement "falls within a firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness"). *Crawford* expressly overruled *Roberts* on the ground that *Roberts* was inconsistent with the original understanding of the Confrontation Clause, *Crawford*, 541 U.S. at 60–65, 124 S.Ct. 1354, which targeted the "civil-law mode of criminal procedure" permitting the use of *"ex parte* examinations as evidence against the accused," *id.* at 50, 124 S.Ct. 1354. Relying on that original understanding, the Court rejected the "indicia of reliability" test

from *Roberts* and held instead that the Confrontation Clause presents an absolute bar to the admission into evidence of a "testimonial" out-of-court statement unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

In *Bourjaily*, decided after *Roberts* but before *Crawford*, the Supreme Court expressly relied on *Roberts*. The Court reasoned that "the co-conspirator exception to the hearsay rule [Fed.R.Evid. 801(d)(2)(E)] is firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts*, a court need not independently inquire into the reliability of such statements." *Bourjaily*, 483 U.S. at 183, 107 S.Ct. 2775. Brist is therefore correct that the Court has rejected *Bourjaily*'s underlying reasoning by now requiring courts to conduct a separate Confrontation Clause analysis for out-of-court "testimonial" statements, even when the statements at issue otherwise satisfy a firmly-rooted hearsay exception. *See, e.g., Melendez–Diaz v. Massachusetts*, 557 U.S. 305, ——, 129 S.Ct. 2527, 2540, 174 L.Ed.2d 314 (2009) (holding that certificates of analysis produced by forensic scientists who conducted a chemical analysis of drugs seized from the defendant are subject to Confrontation Clause challenge "[w]hether or not they qualify as business or official records"); *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (subjecting "excited utterances" to Confrontation Clause analysis). But Brist argues further that, because the reasoning in *Bourjaily* is so "antithetical" to *Crawford* and its progeny, we may disregard *Bourjaily*. We disagree.

■ To be sure, *Crawford* has cast doubt on *Bourjaily*'s *reasoning*. However, only the Supreme Court may overrule one of its own decisions. *Thurston Motor*

*Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam) ("Needless to say, only this Court may overrule one of its precedents."); *see also Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (rejecting the argument that the Court has overruled its own precedent, even when five Justices have expressed doubt about the precedent in question). As the Court has stated, "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

The Supreme Court's rule recognizes the distinction between the reasoning of an opinion and the holding of a case. The Court may cast doubt on the reasoning of an opinion by adopting different, perhaps even conflicting, reasoning in a subsequent opinion. Casting doubt on an opinion's *reasoning,* however, is not the same as overruling the *holding* of a prior decision. The holding of *Bourjaily*—that admission of a nontestifying coconspirator's unwitting statements to a government informant does not violate the Confrontation Clause—is still good law and is binding on this court. Put differently, it is not our "prerogative" to sound *Bourjaily*'s death knell. *State Oil Co. v. Khan,* 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

Our conclusion that *Bourjaily* remains good law is consistent with statements by the Supreme Court in three of its recent Confrontation Clause decisions. In *Crawford,* the Court suggested that *Bourjaily* was "faithful to the original meaning of the Confrontation Clause." 541 U.S. at 60, 124 S.Ct. 1354. Then in *Davis,* the Court proclaimed that the statements made by *Bourjaily*'s coconspirator—"statements made unwittingly to a Government informant"—would not have posed a Confrontation Clause problem because the statements were "clearly nontestimonial." 547 U.S. at 825, 126 S.Ct. 2266. Finally, in *Giles v. California,* a plurality of the Court unambiguously endorsed the continuing vitality of *Bourjaily:*

> *Bourjaily v. United States,* 483 U.S. 171 [107 S.Ct. 2775, 97 L.Ed.2d 144] (1987), held that admission of the evidence did not violate the Confrontation Clause because it falls within a firmly rooted hearsay exception—the test under *Ohio v. Roberts,* 448 U.S. 56, 66 [100 S.Ct. 2531, 65 L.Ed.2d 597] (1980), the case that *Crawford* overruled. In fact it did not violate the Confrontation Clause for the quite different reason that it was not (as an incriminating statement in furtherance of the conspiracy would probably never be) testimonial.

554 U.S. 353, 374 n. 6, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008) (plurality opinion).[3] Because the Court has never overruled *Bourjaily,* and has actually endorsed *Bourjaily* in three of its recent decisions, we conclude that *Bourjaily* remains good law.

Accordingly, because *Bourjaily* is on point and remains good law, it controls our disposition of the federal constitutional question presented in this case.

**3.** We disagree with Brist's assertion that the *Giles* plurality has indicated in this paragraph that *Bourjaily* is no longer good law. At most, the paragraph from *Giles* implies that *Crawford*'s overruling of *Roberts* casts doubt on *Bourjaily*'s reasoning, a point that we discuss above, not that the Court has overruled *Bourjaily.* Indeed, to the extent the *Giles* plurality suggests that the statement of *Bourjaily*'s coconspirator would be admissible under the *Crawford* analysis, *Giles* reaffirms *Bourjaily*'s holding.

### III.

For the foregoing reasons, we hold that the district court's admission into evidence of Garcia's recorded statement did not violate Brist's rights under the Confrontation Clause of the Sixth Amendment. We therefore affirm Brist's convictions, but remand to the district court so that it may modify Brist's sentence in accordance with the decision of the court of appeals.

Affirmed and remanded.

GILDEA, Chief Justice (concurring).

I agree with the majority that the result below should be affirmed. But I write separately because I would not ground the outcome in this case on *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). As the majority notes, in *Bourjaily*, the Supreme Court "expressly relied on" *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *See Bourjaily*, 483 U.S. at 182–83, 107 S.Ct. 2775. The Court overruled *Roberts* in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). As a result of *Crawford*, I agree with the majority that "the Court has rejected *Bourjaily*'s underlying reasoning." I therefore would not base the result in this case on *Bourjaily*.

I instead would affirm the court of appeals under the analysis the Supreme Court set forth in *Crawford* and its progeny. Under that analysis, courts are to consider whether the statement was testimonial. *Crawford*, 541 U.S. at 59, 124 S.Ct. 1354. The Court has not given a complete definition of testimonial, but the focus of the Court's analysis in post-*Crawford* cases has been on the "primary purpose" of the statement. *See Michigan v. Bryant*, — U.S. ——, 131 S.Ct. 1143, 1155, 179 L.Ed.2d 93 (2011). If the "primary purpose" of the statement was "to establish or prove past events potentially relevant to later criminal prosecution," the statement is testimonial. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Assessed under the primary-purpose standard, the statement at issue here—"A quarter that she owes ya"—is not testimonial.

As the majority's discussion of the facts establishes, the statement was made in an informal setting, not during a formal interrogation. Garcia made the comment as part of an ongoing drug transaction with his friend, and there is no evidence that Garcia was aware that he was speaking to a government informant. Most importantly, the statement was not made to establish or prove past events. Based on this analysis, I would hold that the statement was not testimonial. *See Bryant*, 131 S.Ct. at 1162 (determining "the 'primary purpose' of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs"). I therefore would affirm the court of appeals.

MEYER, J. (concurring).

I join in the concurrence of Chief Justice Gildea.